IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ENTERTAINMENT ASSOCIATION, INC., | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:17-cv-594 |
| GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS. | § § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Texas Entertainment Association, Inc. files this Original Complaint against Glenn Hegar, Comptroller of Public Accounts of the State of Texas (the "Comptroller").

## I.  INTRODUCTION

1.      This is an action for money damages, declaratory judgment, and injunctive relief brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 for violations of Plaintiff's equal protection, due process, and free speech rights.

## II.  PARTIES

2.      Plaintiff Texas Entertainment Association, Inc. is a Texas corporation that conducts business throughout Texas.

3.      Defendant Glenn Hegar, sued in his official capacity, is Comptroller of Public Accounts for the State of Texas and may be served with process at 111 East 17th Street, Room 113, Austin, Travis County, Texas 78701.

### III.   JURISDICTION

4.     This Court has original jurisdiction pursuant to the following statutory and common law claims:

    (a)    Defendant's acts, omissions, and wrongful conduct are violations of the Free Speech, Equal Protection, and Due Process clauses and First, Fifth, and Fourteenth Amendments of the United States Constitution; and

    (b)    Defendant's acts, omissions, and wrongful conduct violate Plaintiff's constitutional rights and are actionable pursuant to 42 U.S.C. § 1983.

5.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil matters arising under the laws of the United States and has jurisdiction to award damages and grant equitable or other relief. Specifically, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the Constitution of the United States, including but not limited to the First, Fifth, and Fourteenth Amendments to the United States Constitution. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because this is an action to redress the deprivation of federal constitutional rights under a state statute pursuant to 42 U.S.C. § 1983. Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 further authorize this Court to enter a declaratory judgment.

### IV.   VENUE

6.     Plaintiff is a Texas Corporation and does business throughout Texas. Venue of this case lies in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because this is a civil action not founded in diversity of citizenship, and this claim arose and Defendant resides in this District.

### V.   FACTS AND CONSTUTIONAL VIOLATIONS

7.     This is a case about an administrative amendment retroactively changing the way the Comptroller interprets a $5 Fee Statute purporting to tax Sexually Oriented Businesses

("SOBs"). This new rule purports to change the scope of the statute to include not only nude and topless entertainment, but certain kinds of expression featuring fully covered entertainment, and specifically including where dancers wear latex clothing.

8.      Plaintiff Texas Entertainment Association, Inc. ("TEA") is an association of businesses, including those featuring nude or topless entertainment ("SOB Businesses") and businesses featuring only entertainers who are fully covered ("Non-SOB Businesses").

9.      The Texas Legislature passed the $5 Fee Statute in 2007, and it became effective January 1, 2008. *See* TEX. BUS. & COM. CODE §§ 102.051-102.056. The fee imposed on SOBs as defined in Business & Commerce Code § 102.051, which includes businesses featuring nude entertainment and permits the consumption of alcohol. The issue of whether or not a dancer is "clothed" and therefore not "nude" determines whether an establishment is an SOB subject to the fee. *See* TEX. BUS. & COM. CODE § 102.051. Non-SOB Businesses feature expressive dance from female dancers wearing latex clothing so that they reveal no portion of their breasts "below the top of the areola of the breasts." *See* TEX. BUS. & COM. CODE § 102.051. Accordingly, the dancers are clothed and not "nude" under either the common meaning and understanding of "nude" or "nudity," nor the definition of "nude" that would make the business an SOB pursuant to the Texas Business and Commerce Code.

10.      From the time of the $5 Fee Statute's effective date until mid-2015, the Comptroller visited the Non-SOB Businesses many times and observed their method of operation, but did not challenge the Non-SOB Businesses' position that they did not provide "nude" entertainment and therefore were not Sexually Oriented Businesses. No assessments of the $5 Fee tax were imposed on Non-SOB Businesses featuring latex during the vast majority of the time the $5 Fee Statute has been on the books. Further, the Comptroller represented to the

businesses and to Courts that the tax was justified by the 'combustible combination of nudity and alcohol,' and that by merely covering the area of prohibited skin (or not being "nude"), a business could continue to feature expressive dance but not be subject to the $5 Fee Statute.

11.     That all changed sometime in 2015. The Business Activity Research Team ("BART"), at the behest of the Comptroller, began issuing an administrative tax assessment called a 'Texas Notification of Exam Results' against Non-SOB Businesses, assessing them for $5 Fee liability from the January 1, 2008, the statute's effective date, through the date of the assessment. These tax assessments are calculated based upon the Non-SOB Business' liquor sales. Specifically, the Comptroller arbitrarily assumes that each customer purchased five drinks, and extrapolates an 'estimate' of the total number of customers that visited the Non-SOB Business for purposes of calculating the club's $5 Fee exposure based on the business' liquor sales. The assessments regularly exceed $1 million in tax liability, and would bankrupt many of the Non-SOB Businesses who are members of the TEA.

12.     Following this wave of enforcement actions against Non-SOB Businesses the Comptroller lost many challenges to these assessments before the State of Office of Administrative Hearings ("SOAH") because the businesses were found to have opaquely covered. Then, on January 29, 2017, the Comptroller amended its rules construing the term "Sexually Oriented Business" within the meaning of the $5 Fee Statute (the "Amended Rule"). *See* 42 TEX. REG. 219, *amending* 34 TEX. ADMIN. CODE § 3.722.

13.     Section 3.722(a)(1) of the Amended Rule states: "Paint, **latex**, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are **not clothing**." (emphasis added). This portion of the Amended Rule purports to create restrictions on the type of covering a person may wear and would for the first time allow the $5 Fee Statute to

apply to a female dancer whose breasts are fully covered. "The comptroller will apply the revised section to all **pending** and future cases." 42 TEX. REG. 223 (emphasis added). The Amended Rule, the definition of "nude," and the retroactive application of the Amended Rule is unconstitutional, and as applied against the Non-SOB Businesses, violates TEA and its members' due process rights and rights to equal protection.

A.   **The Amended Rule is an Unconstitutional Retroactive Law Because it Taxes Businesses for Voluntary Conduct that the Businesses Could Not Have Known Was Taxable.**

14.   The Amended Rule is an unconstitutional retroactive law that substantially impairs contractual relationships and does not serve a significant and legitimate government purpose reasonably related to the Amended Rule, and violates the TEA and its members' rights to due process. "[D]ue process of law requires that at some stage in the proceedings, _**before**_ the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by law fixing the time and place of the hearing." _Londoner v. Denver_, 210 U.S. 373, 385-86 (1908) (emphasis added).

15.   "The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." _Landgraf v. Usi Film Prods._, 511 U.S. 244, 266 (1994) (citing _Usery_ v. _Turner Elkhorn Mining Co._, 428 U.S. 1, 17 (1976)). Notwithstanding that the purported basis of the $5 Fee Statute to generate revenue to combat sexual assault, there is no rational basis connecting retroactive application of the Amended Rule expanding the statute's scope to this purpose. _See TEA v. Combs_, 431 S.W.3d 790, 798 (Tex. App.—Austin 2014, no pet.) ("the first $25,000,000 generated by the tax is directed to the sexual assault program fund, which is a program designed

to address many of "the negative secondary effects of nude entertainment, especially in the presence of alcohol.").

16.     Furthermore, retroactive application of a taxation is a denial of due process where the "nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the event taxable." *Welch v. Henry*, 305 U.S. 134, 147 (U.S. 1938) (citing *Nichols v. Coolidge*, 274 U.S. 531, 542 (1927); *Undertmeyer v. Anderson*, 276 U.S. 440, 445 (1928)).

17.     Almost uniformly across Texas, the businesses that never featured or opted to cease featuring nude entertainment following enactment of the $5 Fee Statute required female dancers to wear opaque latex clothing over their breasts. In addition to this resulting in entertainers not being nude under common meaning or the $5 Fee Statute, the choice of opaque latex covering guaranteed compliance with the law by preventing accidental exposure of skin that could make an entertainer "nude." From January 1, 2008 through mid-2015, when the Comptroller and BART began targeting them, the Non-SOB Businesses had no reason to believe that the Comptroller would attempt to assess them as SOBs. In fact, most of the businesses featuring entertainers wearing latex clothing did so on or around the time of the $5 Fee Statute's effective date, materially changing their business model from nude to non-nude to avoid the tax. For seven years the Comptroller did not seek to assess the $5 Fee Statute's taxation against these businesses, but now, in a move that will bankrupt many, if not most, of these businesses, the Comptroller assesses them for seven years of tax liability ***prior*** to passing the Amended Rule. The Amended Rule—for the first time—purports to expand the scope of the tax's coverage to businesses featuring latex, including TEA's members.

18.     Retroactive application of the Amended Rule would cause voluntary conduct—non-nude and latex covered dancers providing entertainment—to fall within the scope of the $5 Fee Statute. The Amended Rule is the government action purporting to make this conduct taxable, and the TEA's members could not have anticipated it. The Comptroller's tax assessors allowed Petitioners to operate in this manner for **_seven years_** before seeking to impose the tax on their business. Retroactive application of the Amended Rule to expand the scope of the $5 Fee Statute could not have been anticipated in light of the Comptroller's conduct, and is unconstitutional. *Welch v. Henry*, 305 U.S. at 147.

**B.     As Applied to the TEA and its Constituent Members, the Amended Rule Violates their Right to Free Speech, Due Process, and Equal Protection Under the Constitution.**

19.     The Comptroller intentionally treats Non-SOB Businesses differently from other businesses that satisfy the definition of Sexually Oriented Business under the $5 Fee Statute. This includes, but is not limited to, businesses that sponsor sporting events featuring scantily clad cheerleaders, restaurants featuring scantily clad waitresses, and businesses hosting musical guests. All of these types of businesses serve alcohol, feature live performances, and based on the broad definition of "nude" in the $5 Fee Statute,[1] feature nude entertainment because they feature females who leave uncovered "any portion of the[ir] breasts below the top of the areola…or any portion of the…buttocks." *See* TEX. BUS. & COM. CODE § 102.051.

**1.     Unconstitutional Speech Regulation.**

20.     The Amended Rule is an unreasonable restriction upon the TEA and its members' rights of free speech and expression because it is a content based taxation of constitutionally protected speech lacking a compelling government interest. *United States v. Playboy Entm't Group*, 529 U.S. 803, 812-13 (2000). As applied, the Amended Rule is a content-based revision

---

[1]     Based on this definition, many ordinary two piece swimsuits would be considered inadequate cover.

to the $5 Fee Statute, targeting businesses where entertainers are clothed in latex tops but leaving free from taxation the types of businesses described above. The Amended Rule is also not tied to a compelling government interest. As stated by the $5 Fee Statute's advocates, it "would use a fee generated from inessential and entirely discretionary behavior to fund important services to victims of sexual assault." House Research Org., Bill Analysis, Texas H.B. 1751, 80th Leg., R.S. (2007). Importantly, the law does not "claim any defined link between sexual assault and strip clubs." *Id.* In other words, the government interest furthered by the legislation is unrelated to the object of taxation. This is particularly true as applied to a club where entertainers are clothed in latex.

21.    At the very least, the Amended Rule is a subject matter based taxation of constitutionally protected speech, which subjects it to intermediate scrutiny. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). For the reasons above, argeting businesses that feature latex entertainment does not further the $5 Fee Statute's interest and does not satisfy intermediate scrutiny.

22.    Based on the way the Amended Rule is written and applied, a reasonable person cannot tell what speech is taxable and what is permitted, chilling the TEA and its members' right to free speech. *See Papachristou v. Jacksonville*, 405 U.S. 156 (1972) (declaring a vagrancy law unconstitutional for vagueness); *NAACP v. Button*, 371 U.S. 415, 433 (1963) ("standards of permissible statutory vagueness are strict in the area of free expression…Because First Amendment freedoms need breathing space to survive, government may regulate the area only with narrow specificity."). Furthermore, because it purports to tax both nude and non-nude (in the colloquial sense) entertainment, the Amended Rule is impermissibly overbroad because it risks regulating the speech of others not before the court in a manner that is unconstitutional.

*Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981) (law banning entertainment beyond nude dancing is impermissibly overbroad).

### 2.    Discriminatory Enforcement.

23.    The Comptroller's targeted enforcement and application of the Amended Rule against Non-Sob Businesses featuring latex entertainment, without enforcing the rule or assessing the $5 Fee against other businesses featuring "nude" entertainment within the meaning of the $5 Fee Statute, constitutes a violation of equal protection. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Furthermore, the Comptroller's selective enforcement is not related to a legitimate government purpose. *See e.g.*, *Pennell v. City of San Jose*, 458 U.S. 1, 14 (1988); *U.S. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 177 (1980); *Allied Stores v. Bowers*, 358 U.S. 522, 527 (1959).

### 3.    Vagueness.

24.    The Amended Rule is also vague in such a manner that encourages arbitrary and discriminatory enforcement in violation of Petitioners' first amendment, due process, and equal protection rights. US CONST., amends. I, V, XIV. A law is unconstitutionally vague "when people of common intelligence must necessarily guess at its meaning." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). If a law "fails to provide a person of ordinary intelligence fair notice of what is [regulated], or is so standardless that it authorizes or encourages seriously discriminatory enforcement," the law is unconstitutional. *United States v. Williams*, 553 U.S. 285, 305 (2008). Vagueness is particularly problematic for laws that regulate speech or expression; freedom of speech is "delicate and vunerable, as well as supremely precious in our society…[and] the threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *NAACP v. Button*, 371 U.S. at 433.

## VI.    42 U.S.C. § 1983 CLAIM

25.    42 U.S.C. § 1983 prohibits a person acting under color of law from subjecting, or causing the subjecting, of any citizen of the United States or other person within its jurisdiction to the deprivation of any rights, privileges, or immunities secured by the Constitution and the law. Any person who violates § 1983 shall be liable to the injured party.

26.    The Comptroller caused and continues to cause the TEA and its constituent businesses to suffer damages, including, but not limited to, improperly assessed tax liability against them. By this suit, Plaintiff seeks monetary damages, a declaratory judgment, injunctive relief, attorneys' fees, expert fees, and court costs.

## VII.    REQUEST FOR DECLARATORY RELIEF

27.    Pursuant to 28 U.S.C. § 2201, the TEA seeks to have this Court declare the rights and legal relations of the TEA and the Comptroller with respect to relevant provisions of the U.S. Constitution. Specifically, the TEA seeks a declaratory judgment that the Amended Rule:

a.    Constitutes an unlawful attempt to regulate expression protected pursuant to the First and Fourteenth Amendments of the Federal Constitution;

b.    Constitutes a denial of equal protection pursuant to the Fifth and Fourteenth Amendments of the Federal Constitution;

c.    Constitutes a denial of the Due Process of Law pursuant to Fifth and Fourteenth Amendments of the Federal Constitution.

## VIII.    ATTORNEYS' FEES AND EXPERT FEES

28.    Plaintiff is entitled to recover reasonable and necessary attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

## IX.    INJUNCTIVE RELIEF

29.    As more fully set forth above, the Comptroller's retroactive and selective application of the Amended Rule demonstrate the TEA has a substantial likelihood of success on

the merits.

30.    Furthermore, the Comptroller's adoption and application of the Amended Rule presents a substantial threat that it will suffer irreparable injury absent the injunction, in the form of loss of business. The TEA requests a preliminary injunction enjoining the Comptroller from enforcing the Amended Rule and returning the $5 Fee Statute to its status quo construction, and that relief be granted in the form of a permanent injunction at the time of trial

31.    Without this injunctive relief, the TEA and its constituents will suffer irreparable injury while this suit is pending. The TEA has no adequate remedy at law because the Comptroller will seek to preclude recovery of any damages sought by the TEA on the basis of immunity and because the ongoing tax assessments will bankrupt many of the TEA's members. Furthermore, this threatened injury outweighs any harm the injunction might cause the Comptroller, and the injunction will not adversely affect the public interest. The TEA is willing to post a bond in the amount the Court deems appropriate. The TEA asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Comptroller.

## X.    CONDITIONS PRECEDENT

32.    All conditions precedent have been performed or have occurred.

## XI.    PRAYER

WHEREFORE, Plaintiffs respectfully request judgment be entered in their favor awarding;

    a.    Monetary damages;

    b.    Declaratory judgment;

    c.    A Preliminary and Permanent Injunction;

    d.    Prejudgment and post-judgment interest as allowed by law;

e.    Attorneys' fees;

f.    Expert fees;

g.    Costs of suit; and

h.    All other relief, in law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Casey T. Wallace
Casey T. Wallace
State Bar No. 00795827
Federal I.D. No. 20117
FELDMAN & FELDMAN, PC
3355 W. Alabama St., Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
Email:  casey.wallace@feldman.law

ATTORNEY-IN-CHARGE FOR TEXAS
ENTERTAINMENT ASSOCIATION, INC.

OF COUNSEL FOR PLAINTIFF:

Benjamin W. Allen
State Bar No. 24069288
Federal I.D. No. 1058996
FELDMAN & FELDMAN, PC
3355 W. Alabama St., Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
Email:  ben.allen@feldman.law