IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ENTERTAINMENT ASSOCIATION, INC. | § § § | |
| V. | § § | NO. 1:17-CV-594-LY |
| GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS | § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before this Court are Defendant's Motion to Dismiss (Dkt. No. 5), Plaintiff's Response (Dkt. No. 10), Defendant's Reply (Dkt. No. 14); Defendant's Supplemental Brief (Dkt. No. 18) and Plaintiff's Response (Dkt. No. 19). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Texas Entertainment Association, Inc. (TEA) brings this suit against Glenn Hegar, in his official capacity as Comptroller of Public Accounts of the State of Texas (Comptroller), asserting that a "fee" assessed on sexually oriented businesses violates the First Amendment. The statute at issue, TEX. BUS. & COM. CODE § 102.052, levies a $5 "fee"[1] for each customer admitted into a sexually-oriented business. This is not the first case challenging the fee. In fact, TEA and a number of sexually-oriented businesses brought suit shortly after the law went into effect challenging

---

[1] As the statute refers to this as a "fee," in this Report and Recommendation the Court will use that term to refer to the assessment.

the statute on First Amendment grounds, among others. In that case, the Texas Supreme Court found that the fee did not violate the Constitution. *See Combs v. Tex. Entmt. Ass'n*, 347 S.W.3d 277, 288 (Tex. 2011). This case, however, does not challenge the statute itself, but rather the Comptroller's limited interpretation of the word "clothing." This is because whether a business is a sexually-oriented business depends on the definition of "nude" as defined in § 102.051. This section defines nude as "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks." The Texas Regulatory Code provides additional guidance on what materials constitute "clothing" for the purposes of the statute. In January 2017, the definition of clothing was limited to exclude "[p]aint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state." 42 TEX. REG. 219. The Comptroller determined that this subjected more businesses to the fee and instituted proceedings to collect the fees both moving forward and reaching back to 2008 when the statute was first enacted.

TEA challenges this interpretation, arguing that it violates the businesses' right to freedom of expression, due process, and equal protection, and that the interpretation is unconstitutionally vague. TEA also argues that the Comptroller's retroactive application of the interpretation violates due process. The Comptroller filed the instant motion to dismiss arguing: (1) TEA's claims are barred by the Tax Injunction Act; (2) this Court should dismiss on comity grounds; (3) Hegar is immune from suit under the 11th Amendment; and (4) TEA lacks standing to sue.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### III. ANALYSIS

**A.  Tax Injunction Act**

The Tax Injunction Act (TIA) precludes a federal district court from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA is a "broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (1998) (quoting *United Gas Pipe Line Co. v. Whitman*, 595 F.3d 323, 326 (5th Cir. 1979)). For the statute to apply, two conditions must be met: (1) the law at issue must be a tax, as opposed to a regulatory fee, and (2) the state court must be "equipped to furnish the plaintiffs with a plain, speedy, and efficient remedy." *Id.*

The threshold question requires this Court to determine whether TEX. BUS. & COM. CODE § 102.052 levies a "tax" or a "fee." Three main distinctions assist courts in determining whether the statute imposes a tax or fee. A fee "is imposed (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not

4

simply for general revenue-raising purposes." *Neinast v. Texas*, 217 F.3d 275, 278 (5th Cir. 2000).[2] This question is determined under federal, not state law, and "[t]he label affixed to [a statute] by its drafters has no bearing on the resolution of the question." *Home Builders Ass'n*, 143 F.3d at 1010 n.10.

As noted in *Home Builders*, "[d]istinguishing a tax from a fee often is a difficult task" as "the line between a 'tax' and a 'fee' can be a blurry one." *Id.* at 1011 (internal quotations omitted). Rather than being mutually exclusive, taxes and fees exist on "a spectrum with the paradigmatic fee at one end and the paradigmatic tax at the other;" weighing the three factors determines where on the spectrum the challenged statute lies. *Neinast*, 217 F.3d at 278 (quoting *San Juan Cellular Telephone Co. v. Pub. Serv. Com'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992)). Here, the analysis for the first two factors is fairly simple. The statute was imposed by the legislature, moving the assessment on the spectrum closer to a classic tax. On the other hand, the assessment is imposed solely on sexually-oriented businesses that allow alcohol consumption, as opposed to the public at large. Though this cost can be—and almost certainly is—passed on to the customers, the imposition of the statute directly on only a subset of the population pushes the assessment toward the other end of the spectrum, that of a regulatory fee. The first two factors therefore balance out, leaving the third to tip the scales in either direction.

---

[2]*See also Home Builders Ass'n*, 143 F.3d at 1011 ("Workable distinctions emerge from the relevant case law, however: the classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.") (footnotes omitted).

For this question, it "is not where the money is deposited, but the purpose of the assessment" that matters. *Id.* A fee can "serve regulatory purposes directly by . . . deliberately discouraging particular conduct by making it more expensive" or indirectly by "raising money placed in a special fund to help defray the agency's regulation-related expenses." *San Juan Cellular*, 967 F.2d at 985. A tax, on the other hand, "raises money, contributed to a general fund, and spent for the benefit of the entire community." *Id.* Courts are "far more concerned with the purposes underlying the [statute] than with the actual expenditure of the funds collected under it," and to determine this "look principally to the language of the [statute] and the circumstances surrounding its passage." *Home Builders Ass'n*, 143 F.3d at 1011–12.

The purpose for which this statute was enacted is clearly regulatory in nature. When the bill was proposed, the heading noted that it was an act "relating to the imposition and use of a fee on certain sexually oriented businesses and certain programs for the prevention of sexual assault." H.B. 1751, 80th Leg., 2007 Reg. Sess. (Tex. 2007). The Texas Supreme Court noted—when addressing whether the statute violated the First Amendment—that the statute was drafted to limit "the secondary effects of nude dancing when alcohol is being consumed." *Combs v. Tex. Entmt. Ass'n, Inc.*, 347 S.W.3d 277, 287–88 (Tex. 2011). It further pointed out that a "business can avoid the fee altogether simply by not allowing alcohol to be consumed." *Id.* at 288. Thus, the statute evidences an intent to regulate behavior, with the revenues raised as a mere side effect. *See Gen-On Mid-Atlantic, LLC v. Montgomery Cty, Md.*, 650 F.3d 1021, 1026 (4th Cir. 2011) (finding that a carbon charge was a regulatory fee when it also sought to raise revenue for greenhouse gas reduction programs).

On the other hand, the funds raised are to be distributed to a sexual assault fund, rather than directly to the regulatory body. *See* TEX. BUS. & COM. CODE § 102.054. Thus, the revenue raised does not go to defray the costs of regulation. TEA argues that because the revenues go to a single fund, as opposed to the general revenue fund, this indicates that the statute imposes a fee. The location of the funds is relevant to this inquiry, but the fact that the funds are not deposited into the state's general revenue fund, but instead are used for a more specific purpose, is not dispositive. *See Tramel v. Schrader*, 505 F.2d 1310, 1315–16 (5th Cir. 1975) (finding that the revenues generated were not required to be distributed for "general governmental purposes," but could rather be distributed for specific purposes)*; Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 731 (7th Cir. 2011) ("That the revenue is earmarked for a particular purpose is hardly unusual . . . ."). However, the fact that the revenues are limited to one fund that is related to the very behavior that the statute seeks to inhibit tips the scales in favor of finding the statute imposes a fee. Thus , the legislature's stated purpose in enacting the statute, taken together with the limited—and related—use of the funds, points to the statute imposing a regulatory fee.

Thus, considering the three factors relevant to this analysis, the fee at issue here, while certainly not all the way at the paradigmatic fee end of the spectrum, is closer to that end of the spectrum than the paradigmatic tax side of the spectrum. Accordingly, the Tax Injunction Act does not divest the Court from jurisdiction to address TEA's claims.[3]

---

[3] In the Comptroller's Motion to Dismiss, it also argues that the Texas court of appeals had previously decided that the statute imposed a tax. As discussed in this Court's Order on October 11, 2017, this argument has no merit. First, this issue is decided under federal, not state law. *Home Builders Ass'n*, 143 F.3d at 1010 n.10. Moreover, the Texas courts noted that they were in fact expressly not deciding the issue. *Tex. Entmt. Ass'n v. Combs*, 431 S.W.3d 790, 794 n.1 (Tex. App.—Austin 2014, pet. denied) ("Given that the primary dispute in this case concerns whether the relevant statute is an occupation tax, we refer to the statute as a tax for the sake of convenience.");

**B.     Comity**

The Comptroller alternatively argues that, even if the TIA does not preclude jurisdiction over TEA's claims, the comity doctrine requires dismissal. That doctrine "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010) (citing *Fair Assessment in Real Estate Assn., Inc. v. McNary*, 454 U.S. 100 (1981)). In *Levin* the plaintiff was objecting to the existence of tax benefits that its competitor received under Ohio law as discriminatory. The district court had concluded that the TIA did not bar the suit, because the suit did not seek to "enjoin, suspend or restrain the assessment, levy or collection of any tax," but instead challenged the *failure* to tax. It nevertheless concluded that it should refrain from deciding the case under the comity doctrine because the relief requested "would require Ohio to collect taxes which its legislature has not seen fit to impose." *Id.* at 420. In affirming that decision, *Levin* held that "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* at 421. Because there was "an adequate state-court forum . . . available to hear and decide [the plaintiff's] constitutional claims," comity dictated that the be dismissed. *Id.*

Relying on *Levin*, the Comptroller contends that TEA has an adequate state forum to pursue its claims, and therefore the comity doctrine should apply. In particular, he points to the number of cases currently in state court challenging this regulation—eight at last count (Dkt. No. 18 at 9 n.2)—as evidence that this case should proceed in state court. This argument misunderstands the application of the comity doctrine. As with the TIA itself, the comity doctrine has no application

---

*see also Combs v. Tex. Entmt. Ass'n, Inc.*, 347 S.W.3d 277, 281 (Tex. 2011) (assuming without deciding that the statute imposed a tax rather than a fee because the legal challenge did not depend on that question in that case). Thus, this argument fails.

8

where the charge at issue is a fee, not a tax. Like the TIA, the purpose of the comity doctrine is to avoid "disrupting state *tax* administration." *Id.* at 417. If the litigation concerns not a tax, but instead a fee, then the suit by definition cannot disrupt a state's administration of its tax system. *Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F. Supp. 2d 93, 935 (N.D. Ohio 2005) ("The TIA and the principle of comity apply only if the challenged assessment is a 'tax,' as opposed to a 'regulatory fee' . . . .").[4] Moreover, reading the comity doctrine to encompass regulatory fees would essentially negate the regulatory fee versus tax distinction at the heart of TIA jurisprudence. *See Z & R Cab*, 616 F. App'x at 538 ("[E]xpanding comity to our case would, it seems to me, mean that the doctrine would bar any suit against a state practice that is subject to rational basis review, a radical curtailment of the scope of § 1983 unsupported by cases from any level of the federal judiciary.").

**C.      Eleventh Amendment Immunity**

Next, the Comptroller contends that he should be immune from suit under the Eleventh Amendment. TEA brought suit against the Comptroller in his official capacity, arguing that his interpretation of "clothing" and retrospective application of the interpretation violate the Constitution. The Eleventh Amendment precludes suits in which a state agency is named as a

---

[4] *See also Z & R Cab, LLC v. Philadelphia Parking Authority*, 616 F. App'x 527, 537–38 (3d Cir. 2015) (Ambro, J., concurring) ("Every court of appeals to address the question has applied comity only in state *tax* cases where an adequate state remedy exists. Taxes aside, federal courts must exercise their virtually unflagging obligation . . . to exercise the jurisdiction given them . . . when presented with constitutional challenges to regulatory fees.") (internal quotations omitted); *Attorneys' Liability Assurance Society, Inc. v. Fitzgerald*, 174 F. Supp. 2d 619, 627–29 (W.D. Mich. 2001) (finding that "federalism and comity principles are only implicated when a 'tax' is at issue, an dare not present with a 'fee'"); *Etzler v. City of Cincinnati, Ohio*, 2008 WL 11352572, at *2 (S.D. Ohio Dec. 17, 2008) ("Accordingly the VBML fee is not a tax and the Tax Injunction Act and the principles of comity are not applicable.").

9

defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This includes suits against state officials when "the state is a real, substantial party in interest." *Id.* at 101–02. There is a narrow exception to Eleventh Amendment immunity under *Ex Parte Young*, 209 U.S. 123 (1908), allowing a plaintiff to bring a suit for a violation of the Constitution or federal law when it is "brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). To decide if the *Ex Parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).

Here, TEA sues the Comptroller solely in his official capacity, and seeks both damages and equitable relief under § 1983. Dkt. No. 1 at 1. In each of the claims, TEA makes clear that it is challenging the so-called "Amended Rule" and refers throughout the Complaint to the Comptroller by his title. A suit against an officer in his official capacity "is, in all respects other than name, to be treated as a suit against the entity," and the real party in interest is the state. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Claims for damages against a state officer in their official capacity are barred under the Eleventh Amendment. *Id.* at 169. Because TEA has only sued the Comptroller in his official capacity, its claim for damages is barred by the Eleventh Amendment.[5]

---

[5]The Comptroller also moved to dismiss TEA's claims on the basis of qualified immunity, despite the fact that the doctrine only applies to suits against officers in their *individual* capacity. Dkt. No. 5 at 11. The TEA compounds the confusion by responding to the arguments without addressing the fact that it has not sued Hegar (or any other state officer) individually. Dkt. No. 10 at 14-19. Because there are no individual capacity claims brought here, the qualified immunity doctrine is inapplicable.

The claim for declaratory and injunctive relief, however, is viable under *Ex Parte Young*. *Ex Parte Young* identifies an exception to the general immunity for suits brought for prospective, as opposed to retroactive, relief. TEA requests declaratory and injunctive relief in the form of declarations that the Comptroller's interpretation of clothing violates the First Amendment, Due Process, and Equal Protection clauses, that it is unconstitutionally vague, and that the Comptroller's retroactive application of the interpretation violates the Due Process clause. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) ("The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'"). These claims clearly request relief that is prospective in nature, and therefore fit squarely into the *Ex Parte Young* exception.

The Comptroller also argues that the reasoning in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) applies to this case to preclude application of *Ex Parte Young*. Dkt. No. 14 at 4–5. However, *Coeur d'Alene* is inapplicable to the circumstances in this case. In *Couer d'Alene*, the Supreme Court found that, based on the facts presented by that case, *Ex Parte Young* did not apply because the suit "implicate[d] special sovereignty interests." 521 U.S. at 281. There, the Couer d'Alene Tribe sought an injunction for an allegedly "ongoing violation of its property rights in contravention of federal law." *Id.* The court viewed the "the Tribe's suit [as] the functional equivalent of a quiet title action." *Id.* The state's interest in its sovereign land, the court found, precluded application of *Ex Parte Young* and required resolution in state court. *Id.* Simply because a party is challenging an action taken under a state's police powers does not mean *Couer d'Alene* applies; rather, the suit must be "the functional equivalent of a quiet title action" against the state. *Id.* at 495. Here, claims that a state tax statute violates the Constitution are clearly not the equivalent

of a quiet title action. Thus, the Comptroller is not immune from TEA's claims for declaratory and injunctive relief.

**D.      Standing**

Finally, the Comptroller argues that TEA lacks standing to bring suit on behalf of its business members. To establish standing, a plaintiff must show (1) that it has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent;" (2) a causal connection between the injury and the complained-of conduct; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted). The Comptroller contends that TEA cannot show that it is subject to the fee that is being challenged in the lawsuit, and therefore cannot show an injury in fact.

TEA argues that it has associational standing, as an organization representing the interests of its members. An association has standing to sue to redress its member's injuries when:

> it can show that (1) one or more of the organization's members would have standing in his or her own right; (2) the interests which the organization seeks to protect in the lawsuit are germane to the purposes of the organization; and (3) the nature of the case does not require the participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue.

*Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827–28 (5th Cir. 1997) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342–43 (1977)). Here, TEA has sufficiently pled associational standing. First, it has pled that several of its members are subject to the fee, which would evidence the member's injury in fact. Dkt. No. 1 at 3 (pleading that TEA "is an association of businesses, including those featuring nude or topless entertainment . . . and businesses featuring only entertainers who are fully covered"). It has also pled that the TEA's goal is to protect the financial interests of its members, which is germane to the purposes of the

organization. *Id.* at 11. Finally, the nature of the case does not require the affected members to participate as plaintiffs. As noted above, TEA's claims for damages should be dismissed pursuant to the Eleventh Amendment; the remaining claims for declaratory and injunctive relief do not require the individual members to sue in their own rights, but rather they can be represented as a whole. *Cf. Hunt*, 432 U.S. 343 ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.") (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). Thus, TEA has sufficiently pled Article III standing.

## IV. RECOMMENDATIONS

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss (Dkt. No. 5). In particular, the Court recommends that the District Court dismiss TEA's claims for damages, and deny all further relief requested.

## VII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-1429 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 5th day of February, 2018.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE