## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **TEXAS ENTERTAINMENT ASSOCIATION, INC.,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:17-cv-594** |
| | § | |
| **GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS.** | § | |
| | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF TEXAS ENTERTAINMENT ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Texas Entertainment Association, Inc. ("TEA") files this Motion for Summary Judgment against Defendant, Glenn Hegar, Comptroller of Public Accounts of the State of Texas ("Comptroller"), and would respectfully show as follows:

**Table of Contents**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

FACTUAL BACKGROUND .........................................................................................................3

I.  The Comptroller's Longstanding Policy Against Enforcing the $5 Fee Statute
Against Latex Clubs.......................................................................................................................3

II.  The Comptroller's Adoption of the Amended Rule Without Any Connection
to Secondary Deleterious Effects That Would Make it Content Nuetral........................................5

III.  The Comptroller's Failure to Enforce the $5 Fee Statute Against Sexually
Oriented Businesses Other Than Clubs Featuring Expressive Dance. ...........................................6

ARGUMENT AND AUTHORITIES .............................................................................................7

I. The Amended Rule is an impermissible content-based regulation of
constitutionally protected expression.............................................................................................8

    A.  The Amended Rule is content-based, not content-nuetral, because it is
    not directed at regulating the deleterious secondary effects of
    entertainment from latex-clad dancers in the presence of alcohol.......................................9

    B.  The Amended Rule cannot survive strict scrutiny because it is not
    narrowly tailored to a compelling government interest. ....................................................11

    C.  Even if the Amended Rule is content-neutral, it cannot satisfy
    intermediate scrutiny because it does not further a substantial government
    interest.................................................................................................................................12

II. The $5 Fee Statute is an impermissible content-based regulation because it is
directed at clubs featuring expressive dance.................................................................................13

    A.  The $5 Fee Statute is a generally applicable law but directed only at
    clubs featuring expressive dance because of the content of their
    expression. ..........................................................................................................................13

    B. The $5 Fee Statute, as applied to TEA members, cannot survive strict
    scrutiny, because it is not narrowly tailored to a compelling government
    interest.................................................................................................................................15

PRAYER........................................................................................................................................16

CERTIFICATE OF SERVICE ......................................................................................................17

## Table of Authorities

**Cases**

*BNSF Ry. Co. v. Bhd. of Maint. of Way Employees*,
550 F.3d 418, 424 (5th Cir. 2008) ............................................................. 7

*Brazos River Auth. v. GE Ionics, Inc.*,
469 F.3d 416, 434-35 (5th Cir. 2006) ....................................................... 4

*Cent. Power & Light Co. v. Sharp*,
960 S.W.2d 617, 618 (Tex. 1997)............................................................ 10

*City of Erie v. Pap's A.M.*,
529 U.S. 277, 292 (2000)........................................................................ 8

*Cohen v. California*,
403 U.S. 15 (1971)................................................................................ 13

*Combs v. Texas Entm't Ass'n, Inc.*,
347 S.W.3d 277, 288 (Tex. 2011)........................................... 1, 5, 9, 13, 16

Eu v. San Francisco County Democratic Cent. Comm.,
489 U.S. 214, 226, 228-29 (1989) ........................................................... 16

*Fantasy Ranch Inc. v. City of Arlington, Texas.*
459 F.3d 546, 554 (5th Cir. 2006) ................................................... 8, 9, 12

*Fed. Election Com'n v. Wisconsin Right to Life, Inc.*,
551 U.S. 449, 479 (2007)........................................................................ 11

*Holder v. Humanitarian Law Project*,
561 U.S. 1, 27, (2010)............................................... 2, 13, 14, 15, 16

*Illusions—Dallas Private Club, Inc. v. Steen*,
482 F.3d 299, 311 (5th Cir. 2007) ........................................................... 12

*In re Cao*,
619 F.3d 410, 430 (5th Cir. 2010) ........................................................... 13

MD II Entertainment, Inc. v. City of Dallas,
85 F.3d 624, 624 (5th Cir. 1996) ..................................... 2, 9, 10, 11, 16

*MD II Entertainment*.
935 F.Supp. 1394, 98-99 (1995) ...................................... 2, 10, 16

*Pap's A.M.,*
529 U.S. at 289 ......................................................................................... 8, 12

*Police Department of Chicago v. Mosley,*
408 U.S. 92, 95-96 (1972) ............................................................................. 7

*R.A.V. v. St. Paul,*
505 U.S. 377, 385–386, (1992) .................................................................... 13

*Reed,*
135 S. Ct. at 2226 ........................................................................................ 11

*Texas v. Johnson,*
491 U.S. 397, 403, 406–407, (1989) ...................................................... 13, 14

*Turner Broadcasting System v. Federal Communications Commission,*
512 U.S. 622, 640 (1994) .............................................................................. 8

*United States v. O'Brien,*
391 U.S. 367, 377 (1968) ..................................................................... 8, 9, 12

*United States v. Playboy Entertainment Group, Inc.,*
529 U.S. 803 (2000) ...................................................................................... 8

*Wisconsin Right to Life,*
551 U.S. at 478 ............................................................................................ 15

*Wisconsin Right to Life, Inc. v. FEC,*
546 U.S. 410, 411 (2006) ............................................................................ 13

**Statutes**

TAC § 3.722(a)(1) ................................................................................... 1, 16

Texas Business & Commerce Code §§ 102.051-102.056 ........................... 1, 2, 14, 17

**Rules**

42 TEX. REG. ................................................................................... 1, 2, 10, 11, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns the validity of Texas Business & Commerce Code §§ 102.051-102.056 (the "$5 Fee Statute"), a fee facially assessed against all 'Sexually Oriented Businesses,' but only applied to businesses like Plaintiff's members, and TAC § 3.722(a)(1) (the "Amended Rule"), which expands the scope of the $5 Fee Statute in a content-based fashion. As the 345th District Court of Travis County held on April 6, 2018, the Amended Rule which provides that "[p]aint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are not clothing," *is invalid*. (<u>Exhibit B</u>).[1] The Comptroller argues that the Amended Rule 'clarifies' the $5 Fee Statute, but empirically and on its face, the rule expands the $5 Fee Statute to cover entertainment featuring latex clad dancers, for the first time.

The Comptroller's position, from the time the $5 Statute was enacted and expressly stated as late as December 2015, was that dancers covered in latex were not "nude" within the meaning of the statute. Flipping the TEA members' established and justified expectations regarding the Comptroller's longstanding interpretation of the $5 Fee Statute on its head, in January of 2017, it adopted the Amended Rule, and stated that it applied retroactively. 42 TEX. REG. 223 (("The comptroller will apply the revised section to all **pending** and future cases.") (emphasis added)).

Under the original $5 Fee Statute, which applies to "Sexually Oriented Businesses," a business is subject to the fee if it features "nude" entertainment, or entertainment featuring individuals who are not "clothed." TEX. BUS. & COM. CODE § 102.051. This statute, as enacted by the Texas legislature, survived a facial constitutional challenge as a 'content-neutral' restriction directed at reducing the secondary effects of combining nude dancing in the presence of alcohol consumption. *See Combs v. Texas Entm't Ass'n, Inc*., 347 S.W.3d 277, 288 (Tex. 2011).

---

[1] An index and description of the summary judgment evidence is attached as <u>Exhibit A</u>.

The Comptroller enacted the Amended Rule without any study to link the regulated activity (expressive dance by dancers clothed in latex) to the production of deleterious, substantial secondary effects. *See* TEX. REG. 219, p. 4[2] (containing no discussion of deleterious effects surrounding what the register entry identifies as the newly regulated activity—"Establishments that permit entertainers to apply liquid or semi-liquid latex."). Like in *MD II Entertainment, Inc. v. City of Dallas*, "no evidence indicates that a requirement that dancers wear bikini tops instead of pasties will reduce deleterious secondary effects." 85 F.3d 624, 624 (5th Cir. 1996) (per curiam). The Amended Rule is therefore a content-based regulation of protected First Amendment expression that cannot survive strict scrutiny. *See MD II Entertainment*. 935 F.Supp. 1394, 98-99 (1995), *aff'd* 85 F.3d 624 (5th Cir. 1996).

Also, the $5 Fee Statute is unconstitutional as applied, because the Comptroller uses it to target clubs featuring expressive dance while ignoring myriad business activity fitting within the statutory definition of Sexually Oriented Business. *See* TEX. BUS. & COM. CODE § 102.051(2). Given the $5 Fee Statute's broad definition of "nudity" and the Comptroller's even broader interpretation of the term, pop concerts, sporting events featuring cheerleaders, scantily clad waitresses, and burlesque show entertainers engage in 'Sexually Oriented Business' throughout the state, but never have the statute enforced against them. This makes the enforcement against clubs featuring expressive dance an unconstitutional regulation of expressive content. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 27, (2010).

The Court should grant TEA's Motion for Summary Judgment, rule that the Amended Rule is invalid, and hold the $5 Fee Statute is unconstitutional as applied.

---

[2] Pagination corresponds with the version of the Texas Register entry filing the appendix accompanying this motion.

## FACTUAL BACKGROUND

Following enactment of the original $5 Fee Statute, businesses featuring expressive dance, including members of TEA, elected to feature dancers wearing opaque latex covering (the "Latex Clubs"), putting them at a competitive disadvantage to clubs featuring nude entertainment but avoiding the expense of the $5 Fee. (Exhibit F). Other clubs, including TEA members, took their lumps and paid the $5 Fee. (*Id.*). Latex Clubs are a reaction to the $5 Fee Statute. (*Id.*). Together they form the group of businesses that the Comptroller considers 'sexually oriented' and therefore targets for selective enforcement of the $5 Fee Statute based on the content of expression they feature—dance entertainment in a club setting. This is a case about how the Amended Rule affects Latex Clubs, and about the Comptroller's content based selection of clubs featuring expressive dance as enforcement targets for the $5 Fee Statute.

**I.      The Comptroller's Longstanding Policy Against Enforcing the $5 Fee Statute Against Latex Clubs.**

From the time of the $5 Fee Statute's enactment until mid-2015, the Comptroller did not consider Latex Clubs to be sexually oriented business subject to the fee. Texas Comptroller representatives and the Business Activity Research Team ("BART") regularly visited the Latex Clubs, did not assess the $5 Fee against them, and agreed that they did not meet the statutory definition of a Sexually Oriented Business if the dancers were clothed in latex. (*Id.*). As late as December of 2015, BART informed clubs featuring expressive dance with entertainers clothed in latex tops that any amounts assessed under the $5 Fee Statute "will be reversed and zeroed out" and that the communication serves "as documentation of our determination as well as for coding your sexually oriented business fee as set up in error." (Exhibit G; *see also* Exhibit H; Exhibit I).

In fact, Paul Zavala, an enforcement officer with the Comptroller, readily admits that as far as he knew when he testified on October 10, 2016, latex qualified as 'clothing' and dancers with

their breasts fully covered in latex did not create $5 Fee Statute exposure, because the clubs featuring them were not Sexually Oriented Businesses. (Exhibit D, 7:10-14, 32:7-20). Mr. Zavala began enforcing the $5 Fee Statute in the summer of 2015, by determining whether a business was operating as a sexually oriented business. (*Id.*, 8:6-19; 11:2-5). In this capacity, Mr. Zavala determined that if a club features dancers with their breasts fully covered in latex, that was adequate to avoid $5 Fee liability. (*Id.*, 31:13-23). He had never even heard of the Comptroller's policy that latex is not 'clothing' at the time he gave his testimony:

> Q.    They can be covered with just latex.
> A.    Right.
> Q.    At any point did anyone tell you that you should interpret the rule so that latex doesn't count as covering?
> A.    No.
> Q.    As far as you know right now, the policy still is latex counts as covering?
> A.    I don't know.
> Q.    Okay. But as far as you know - -
> A.    As far as I know, yes.
> Q.    You don't know that the comptroller policy has changed since the day that you did these evaluations?
> A.    I'm not aware of any changes, no.

(*Id.*, 32:7-20). The Comptroller's official position is that in 2015, when Glenn Hegar's administration took over, it began to enforce the $5 Fee Statute against Latex Clubs and affirmatively take the position that latex is not 'clothing.' (Exhibit C, 52:2-25).

Regardless of when the Comptroller had its change of heart regarding its own interpretation of 'clothing' to now exclude latex, prior to that point, the Comptroller advised many clubs, including TEA Members, that latex covering sufficed to disqualify a club from being a sexually oriented business subject to the $5 Fee Statute.[3] (Exhibit E, 64:23-65:10). For example, the

---

[3] As TEA's corporate representative, Mr. Craft testifies "vicariously" for the corporation, as to its knowledge and perception. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434-35 (5th Cir. 2006). "[I]f a certain fact is within the collective knowledge or the subjective belief of [TEA], [Mr. Craft] should be prepared on the issue by [TEA], and allowed to testify to it, even if it is not within his direct personal knowledge, provided the testimony is otherwise

Comptroller informed Sugars in San Antonio following a $5 Fee inspection that they were in compliance because their dancers' breasts were covered in latex. (*Id*.). Playmates in Houston was another example of the Comptroller interpreting 'clothing' to include latex, and creating reasonable expectations on behalf of Latex Clubs across Texas. (*See* Exhibit E, 65:14-25).

## II.     The Comptroller's Adoption of the Amended Rule Without Any Connection to Secondary Deleterious Effects That Would Make it Content Nuetral.

The $5 Fee, as enacted by the Texas legislature, survived constitutional challenge as a 'content-neutral' restriction directed at reducing the secondary effects of combining nude dancing in the presence of alcohol consumption. *See Combs v. TEA, Inc*., 347 S.W.3d 277 (Tex. 2011).

Not so with the Amended Rule. According to Mr. Ray Herbert Langenberg, "[t]he Comptroller did not rely upon any adverse effects" in drafting the Amended Rule. (Exhibit C, 144:17-145:2). Likewise, "[t]he Comptroller did not adopt the rule based on whether the statute would or would not mitigate and discourage the secondary effects of erotic dancing in the presence of alcohol," nor did it consider whether the definition of 'clothing' would further the Legislature's purpose because "[t]hat was the job of the Legislature." (*Id.*). The Comptroller conducted no studies of deleterious secondary effects of entertainment from latex clad dancers where alcohol is served, and did not rely on any such studies by others in promulgating the Amended Rule. (Exhibit C, 49:5-50:8).

The Comptroller has produced no evidence or data showing that Latex Clubs increase rates of sexual assault or other negative secondary affects associated with expressive dance at those clubs. Instead, it lodged boilerplate objections to discovery on that issue, claiming that "this request is not likely to lead to discovery of admissible evidence." (Exhibit N, pp. 4-5; Exhibit O, p. 5).

---

admissible lay testimony." *Id.* Accordingly, Mr. Craft's declaration is admissible as to all 24 topics for which the TEA designated him as corporate representative. (Exhibit E, 5:21-6:7).

Now the Comptroller argues that the Amended Rule does not expand the scope of the $5 Fee Statute, but instead clarifies what the legislature originally meant: "when the Legislature used the word clothed, they did not intend for it to cover paint, latex, wax, or other substance applied to the body in a liquid or semi liquid state." (Exhibit C, 141:6-19). This position is irreconcilable with the undisputable evidence of Comptroller's conduct during the $5 Fee Statute's enforcement period until mid-2015, when some Comptroller representatives began to attempt to apply the statute to Latex Clubs. Prior to that period, Latex Clubs were not covered by the $5 Fee Statute, even according to the Comptroller.

## III.    The Comptroller's Failure to Enforce the $5 Fee Statute Against Sexually Oriented Businesses Other Than Clubs Featuring Expressive Dance.

It does not take much buttocks exposure to create sexually oriented business liability under the $5 Fee Statute. According to the Comptroller, if less than 75% of an entertainer's buttocks are covered, and alcohol is served at the establishment, that is a 'Sexually Oriented Business' and the $5 Fee Statute applies. (Exhibit D, 29:14-18). The Comptroller enforces this rule aggressively against clubs featuring expressive dance but leaves numerous other business that fall within the scope of the statute alone. Mr. Craft documents a few of those business, which although meeting the statutory definition of 'Sexually Oriented Business,' are not assessed the $5 Fee by the Comptroller:

- Mr. Craft, TEA's corporate representative, attended a body-building competition in Dallas where females exposed their breasts and both male and female competitors exposed their buttocks, and alcohol was served. (Exhibit E, 43:22-44:1-18; Exhibit F, p.2).

- Katy Perry performed at a concert in Dallas where she exposed the anatomical areas that would make her concerts a 'Sexually Oriented Business' under the $5 Fee Statute. (Exhibit E, 45:8-23; Exhibit F, p. 2). Beyonce Knowles prominently features her buttocks at The Formation World Tour's stop at NRG Stadium in Houston, Texas on May 7, 2016. (Exhibit J, *available at* https://www.pinterest.com/pin/482025966348763099/, last accessed on April 13, 2018). No $5 Fee was assessed for these events. (Exhibit F, p. 2).

- The Suicide Girls burlesque troupe frequently tours throughout Texas and plays at concert venues where alcohol is served and where the female entertainers bare their breasts and buttocks. (Exhibit F, p. 2). They visited Houston on May 1, 2017 and March 19, 2018. (Exhibit K, *available at* http://www.houstonpress.com/slideshow/suicide-girls-scorch-warehouse-live-in-houston-nsfw-9402005/17, last accessed on April 13, 2018; Exhibit L, *available at* http://www.houstonpress.com/slideshow/st-patricks-day-and-suicide-girls-blackheart-burlesque-10308635, last accessed on April 13, 2018).

- Dallas Cowboy cheerleaders, Dallas Maverick cheerleaders, and Houston Rockets cheerleaders all expose portions of their breasts below the top of the areola, making any event they perform at where alcohol is served a 'Sexually Oriented Business.' (Exhibit E, 45:24-46:4-7).

- There are also numerous restaurants serving alcohol throughout Texas featuring wait staff who fit the definition of 'nude' under the $5 Fee Statute, but for whom the Comptroller does not enforce the statute. (Exhibit E, 46:23-47:4; Exhibit F, p. 2).

The Comptroller does not enforce the $5 Fee Statute against any type of business, except for nightclubs featuring expressive dance, despite that numerous such 'Sexually Oriented Businesses' other than nightclubs featuring expressive dance, such as those listed above, exist and do business throughout Texas. (Exhibit F). Again, the Comptroller lodged boiler plate objections to the discovery lodged by TEA on this topic, contending that information which identified $5 Fee Statute against any of the types of businesses listed above as "not likely to lead to the discovery of admissible evidence." (*See* Exhibit O, p. 5). Discovery has closed, and the Comptroller has made no effort to provide any of this evidence. TEA is therefore entitled to an adverse inference that the $5 Fee Statute was not enforced against any of these businesses. *See BNSF Ry. Co. v. Bhd. of Maint. of Way Employees*, 550 F.3d 418, 424 (5th Cir. 2008).

## ARGUMENT AND AUTHORITIES

"[A]bove all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95-96 (1972) (striking down city ordinance that only allowed labor picketing within 150 feet of a school as an impermissible content-based regulation). "[T]he

First Amendment, subject to only narrow and well-understood exceptions, does not countenance governmental control over the content of the messages expressed by private individuals." *Turner Broadcasting System v. Federal Communications Commission*, 512 U.S. 622, 640 (1994). Both the Amended Rule, and the $5 Fee Statute as applied to TEA's members, are such an impermissible restriction on expressive dance, and as such, are unconstitutional.

## I.   The Amended Rule is an impermissible content-based regulation of constitutionally protected expression.

Restriction of sexual speech is a content-based restriction that must meet strict scrutiny.

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000). Therefore, a law that

> applies only to [television] channels primarily dedicated to 'sexually explicit adult programming or other programming that is indecent'… focuses *only* on the content of the speech and the direct impact it has on its listeners. This is the essence of content-based regulation.

*Id.* at 811 (quotations and citations omitted) (emphasis in original). When it comes to sexual speech, or rather, sexual expression, "content based burdens must satisfy the same rigorous scrutiny as [the government's] content based bans." *Id.* at 812.

Supreme Court jurisprudence recognizes a limited exception to restrictions of expressive content. When the purpose of the regulation "is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from *O'Brien* for evaluating restrictions on symbolic speech." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 292 (2000)[4] (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). "If the government interest is related to the content of the expression," strict scrutiny still applies. *Id.* This framework expressly applies to

---

[4] TEA acknowledges that this opinion also identifies nude dancing as expressive conduct that "falls only within the outer ambit of the First Amendment's protection." *Pap's A.M.*, 529 U.S. at 289. However, under the Supreme Court's jurisprudence, the content-based versus content-neutral analysis is the same for both nude and non-nude expression. *See id.* at 291-94 (discussing the same *O'Brien* standard for nude entertainment and burning draft cards); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006) (applying the *O'Brien* standard to sexually oriented businesses).

Sexually Oriented Businesses. *Fantasy Ranch Inc. v. City of Arlington, Texas*. 459 F.3d 546, 554 (5th Cir. 2006).

> A.      **The Amended Rule is content-based, not content-nuetral, because it is not directed at regulating the deleterious secondary effects of entertainment from latex-clad dancers in the presence of alcohol.**

*MD II Entertainment* clearly establishes that the Amended Rule is an impermissible content-based regulation of expression, because to establish content-neutrality, the Comptroller must produce evidence of deleterious secondary effects caused by the conduct sought to be regulated—latex-covered dancers providing entertainment in an establishment where alcohol is served. 85 F.3d at 624. To the extent the Comptroller will rely upon *Combs v. TEA* to suggest that the Comptroller does not bear this burden, this Court is bound by the Fifth Circuit's controlling authority that the law requires some evidence of the regulated activity's connection to deleterious effects. *MD II Entertainment*, 85 F.3d at 624. Additionally, the Supreme Court of Texas' discussion of the legislative process illustrates how a Comptroller rule enacted unilaterally after a comment and notice period is completely different from a statutory enactment following the full rigors of the legislative process:

> "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive....What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." Regardless of what legislators said or did not say during the fee's enactment, the fee does further the State's interest in reducing secondary effects.

*Combs v. TEA, Inc.*, 347 S.W.3d 277, 288 (Tex. 2010) (quoting *United States v. O'Brien*, 391 U.S. 367, 383–384 (1968)). With a statute, legislators may have considered any number of reasons not present in the legislative history, and that legislative history frequently records a bill's sponsors and never includes the bases for each member of congress voting to create a law. In contrast, the

Comptroller adopted the Amended Rule unilaterally following a notice and comment period. *See* 42 TEX. REG. 219. The Comptroller's representative repeatedly and unequivocally admits that there is "no factual basis, investigation or support for [the Amended Rule] other than what is described in writing in the Texas Register." (Exhibit C, 42:16-43:6; 44:2-9, 46:7-18). The Texas Register provides a brief discussion of the legal implications of the Amended Rule but made no mention of the deleterious effects created by latex entertainment in the presence of alcohol. (*Id.*). Rather, as it related to First Amendment issues, the Comptroller simply stated:

> Constitutional issues. Commenters complained that the amendment introduces new First Amendment issues. However, for the reasons stated, the comptroller is adopting this amendment on the belief that it carries out the Legislature's manifest purpose and intention in enacting the statute. The comptroller is not free to disregard the statute for constitutional reasons. *Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997).

42 TEX. REG. 219, p. 7.

The Comptroller's approach does not save the Amended Rule from constitutional challenge for two reasons. First, this precise approach was presented by the City of Dallas and rejected by the trial court's opinion in *MD II Entertainment*. 935 F.Supp. 1394 (1995), *aff'd* 85 F.3d 624 (5th Cir. 1996) (per curiam). That case concerned an amendment to a city ordinance imposing zoning and license requirements on Sexually Oriented Businesses. *Id.* at 1395-96. The amendment expanded the ordinance's application requiring opaque coverage of all a female dancer's breast beneath the areolae. *Id.* at 1396. Upon constitutional challenge, the City of Dallas essentially "argue[d] that the amendments are nothing more than the fine tuning of ordinances, which have previously passed constitutional scrutiny." *Id.* at 1397. However, the Court remained unpersuaded by the city's attempt "to relate the amendments at issue to the constitutionally sound ordinances existing before the amendments," and held the failure to establish a link between deleterious effects and regulated conduct meant that the amendments were impermissibly content based. *Id.* at 1398.

This mirrors the Comptroller's failure to connect the regulation to the deleterious effect that could possibly justify the Amended Rule. There is no link between expressive dance featuring latex covered dancers and any secondary deleterious effects, and regardless of the $5 Fee Statute's constitutionality, the Amended Rule cannot withstand scrutiny.

Second, whatever pass the legislature may have received in *Combs v. TEA* regarding its failure to disclose its presumed intent to regulate the deleterious effects of nude dancing the presence of alcohol, and not nude dancing itself, the Comptroller gets no such pass. By expanding the scope of the $5 Fee Statute to include Latex Clubs, it undertook a burden to show some indication that regulating business featuring latex-clad dancers "will reduce deleterious secondary effects." *See MD II*, 83 F.3d at 624. It then failed to meet that burden. The Amended Rule is therefore presumptively unconstitutional. *Id.*

### B. The Amended Rule cannot survive strict scrutiny because it is not narrowly tailored to a compelling government interest.

Because the Amended Rule is content-based, the burden is on the government to show that the regulation serves (1) a compelling state interest and (2) that the regulation is narrowly-tailored to serve that interest. *Reed,* 135 S. Ct. at 2226.

The Comptroller has no compelling government interest in expanding the definition of "nudity" by narrowing the definition of "clothing" to exclude latex. It cites facilitation of "uniform enforcement" of the SOB Fee Statute: (1) including a definition "that conforms to the commonly understood meaning of the term;" and (2) "memorializ[ing] the comptroller's existing interpretation of what constitutes clothing." 42 TEX. REG. 219, p. 4. Setting aside serious factual inconsistencies with the 'comptroller's interpretation' of whether latex is clothing, restricting protected speech for definitional clarity is not a compelling interest. *Fed. Election Com'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 479 (2007) ("The desire for a bright-line rule ... hardly

constitutes the *compelling* state interest necessary to justify any infringement on First Amendment freedom.") (citations and quotations omitted). The Amended Rule does not survive strict scrutiny.

    **C.**    **Even if the Amended Rule is content-neutral, it cannot satisfy intermediate scrutiny because it does not further a substantial government interest.**

The Fifth Circuit has adopted the following test to evaluate whether government regulation of expression related to sexually oriented businesses survives intermediate scrutiny. The question is whether:

> the regulation is designed to serve a substantial governmental interest, is narrowly tailored, and reasonable alternative avenues of communication remain available, or, alternatively, the regulation furthers an important or substantial governmental interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest.

*Illusions—Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 311 (5th Cir. 2007) (citing *O'Brien*, 391 U.S. at 377). A two-part inquiry is involved under *O'Brien* government interest analysis: (1) whether there is a substantial governmental interest, *i.e.*, "whether the threatened harm is real;" and (2) whether the regulation furthers that interest. *Fantasy Ranch Inc.*, 459 F.3d at 558–59 (quoting *Pap's A.M.*, 529 U.S. at 300).

The Amended Rule fails on both fronts. The Comptroller has set forth no threatened harm that the Amended Rule purports to address, *e.g.*, there is no evidence of deleterious effects resulting from performers who wear latex coverings versus those who wear cloth or cloth-like material while erotically dancing in the presence of alcohol. The Comptroller admits that it considered no such effects and conducted nor referred to any such studies that such effects exist. (Exhibit C, 49:5-50:8, 144:17-145:2). Since the Comptroller admits there is no interest in the expanded regulation effected by the Amended Rule, there is no substantial government interest and the Amended Rule cannot survive intermediate scrutiny.

**II.     The $5 Fee Statute is an impermissible content-based regulation because it is directed at clubs featuring expressive dance.**

The Supreme Court of Texas upheld a constitutional challenge to the $5 Fee Statute, applying the *O'Brien* analysis to determine that the statute is a content-neutral regulation directed at secondary effects of sexually oriented businesses in *Combs v. TEA*.[5] 347 S.W.3d 277. (Tex. 2011). However, when the government uses a statute of general application to regulate speech or expression based on content, "*O'Brien* does not provide the applicable standard for reviewing a content-based regulation of speech." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27, (2010) (citing *R.A.V. v. St. Paul,* 505 U.S. 377, 385–386, (1992); *Texas v. Johnson,* 491 U.S. 397, 403, 406–407, (1989)). The appropriate standard for the $5 Fee Statute, which the Comptroller only applies against clubs featuring expressive dance, is strict scrutiny. The $5 Fee Statute cannot survive strict scrutiny, and must be struck down as unconstitutional.

**A.     The $5 Fee Statute is a generally applicable law but directed only at clubs featuring expressive dance because of the content of their expression.**

Chief Justice Roberts provides the appropriate analysis for when a law of general application targets expression based on its content:

> The Government argues that [the statute at issue] should nonetheless receive intermediate scrutiny because it *generally* functions as a regulation of conduct. That argument runs headlong into a number of our precedents, most prominently *Cohen v. California,* 403 U.S. 15 (1971). *Cohen* also involved a generally applicable regulation of conduct, barring breaches of the peace. See *id.,* at 16. But when Cohen was convicted for wearing a jacket bearing an epithet, we did not apply *O'Brien*. See 403 U.S., at 16, 18. Instead, we recognized that the generally applicable law was directed at Cohen because of what his speech communicated—he violated the breach of the peace statute because of the offensive content of his particular message. We accordingly applied more rigorous scrutiny and reversed his conviction. See *id.,* at 18–19, 26.

---

[5] "It is well-established that the facial upholding of a law does not prevent future as-applied challenges." *In re Cao,* 619 F.3d 410, 430 (5th Cir. 2010) (citing *Wisconsin Right to Life, Inc. v. FEC,* 546 U.S. 410, 411 (2006)).

*Holder*, 561 U.S. at 27-28 (emphasis in original) (citation forms modified). The law here may be directed generally at sexually oriented businesses, "but as applied to plaintiffs, the conduct triggering coverage under the statute consists of communicating a message"—expressive dance at a club in the business of featuring that type of entertainment. *Id.* Since it is, 'then we are outside of the *O'Brien* test, and we must apply a more demanding standard." *Id.* (citing *Texas v. Johnson,* 491 U.S. at 403) (brackets omitted).

TEA's evidence that the $5 Fee Statute targets only the types of "sexually oriented businesses" featuring expressive dance is overwhelming.[6] The Comptroller admits that entertainers with less than 75% of their buttocks in the presence of alcohol creates a sexually oriented business within the meaning of the $5 Fee Statute. (Exhibit D, 29:14-18). Any female providing entertainment who exposes any part her breast below the top of the areola to the bottom of the breast does as well. TEX. BUS. & COM. CODE § 102.051(2). The ubiquity of businesses meeting those standards and the complete lack of Comptroller enforcement of the $5 Fee Statute demonstrates that, as applied, the Comptroller is regulating content.

The Comptroller does not regulate pop concerts, which regularly feature female performers and backup dancers with uncovered buttocks where alcohol is served. (Exhibit E, 45:8-23; Exhibit F, p. 2; Exhibit K, *available at* https://www.pinterest.com/pin/482025966348763099/, last accessed on April 13, 2018). Nor does it regulate body-building competitions, which serve alcohol entertainment featuring bodybuilders who are "nude" within the meaning of the $5 Fee Statute. (Exhibit E, 43:22-44:1-18; Exhibit F, p.2). It also gives burlesque troops a pass, even though they feature females with exposed breasts and buttocks and the venues in which they perform serve

---

[6] The Amended Rule is unconstitutional as applied for the same reason. In fact, the Amended Rules' excluding latex from the definition of "clothing" exclusively targets clubs featuring entertainment featuring latex clad dancers. *See* TEX. REG. 219, p. 4 ("Establishments that permit entertainers to apply liquid or semi-liquid latex are commonly referred to as topless clubs.").

alcohol. (Exhibit F, p.2; Exhibit L, *available at* http://www.houstonpress.com/slideshow/suicide-girls-scorch-warehouse-live-in-houston-nsfw-9402005/17, last accessed on April 13, 2018; Exhibit M, *available at* http://www.houstonpress.com/slideshow/st-patricks-day-and-suicide-girls-blackheart-burlesque-10308635, last accessed on April 13, 2018).

The Comptroller does not enforce the $5 Fee Statute against events featuring entertainment from cheerleaders for professional sports teams, despite that they expose portions of their breasts below the top of the areola and that these events usually serve alcohol. (Exhibit E, 45:24-46:4-7; Exhibit F, p. 2). It ignores restaurants featuring waitstaff who are "nude" pursuant to the $5 Fee Statute. (Exhibit E, 46:23-47:4; Exhibit F, p. 2).

Whatever motivation the Comptroller may have for not enforcing the $5 Fee Statute against these types of businesses, the result is that the $5 Fee Statute only applies to what it considers traditional 'sexually oriented businesses'—clubs featuring expressive dance.[7] In choosing to regulate some types of expression and not others clearly falling within the meaning of the statute, the Comptroller has created a statutory regime that as applied targets a "particular message" or expression, which is subject to strict scrutiny. *Holder*, 561 U.S. at 27-28.

### B.     The $5 Fee Statute, as applied to TEA members, cannot survive strict scrutiny, because it is not narrowly tailored to a compelling government interest.

"A court applying strict scrutiny must ensure that a compelling interest supports *each application* of a statute restricting speech." *Wisconsin Right to Life*, 551 U.S. at 478 (emphasis in original). Unlike regulation of speech that provides "material support" to "particularly dangerous

---

[7] The summary judgment record does not reflect whether the Comptroller enforces the $5 Fee Statute against other types of businesses traditionally consider sexually oriented, such as adult video parlors, adult bookstores, and similar types of businesses. However, this does not matter because even if the Court were to find that the Comptroller enforced the $5 Fee Statute against these types of businesses as well as clubs featuring expressive dance, the statute would still be regulating the businesses by content of expression, and not regulating the secondary effects of "sexually oriented businesses" as defined by the statute. *See* 561 U.S. at 27-28.

and lawless foreign [terrorist] organizations," as was the case in *Holder*, regulation of expression on the basis that its content contains expressive dancing does not serve a compelling government interest. 561 U.S. at 40.

The Supreme Court of Texas held that the government's interest in enacting the $5 Fee Statute was to combat the deleterious secondary effects of nude entertainment in the presence of alcohol. *Combs*, 347 S.W.3d at 287-88. One need look no further than the legislative history to show that, as it relates to clubs featuring expressive dance, "CSHB 1751 would claim no defined link between sexual assault and strip clubs." House Research Org., Bill Analysis, Texas H.B. 1751, 80th Leg., R.S. (2007). That interest is not furthered by enforcing the $5 Fee Statute only at clubs featuring expressive dance. *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 226, 228-29 (1989) (for a law to be narrowly tailored to compelling interest, the Comptroller must prove that the $5 Fee Statute advances that interest).

Nor would that interest, even if furthered by regulating expressive content, rise to the level of compelling government interest to overcome the presumption the that $5 Fee Statute as applied against the TEA's members is unconstitutional. *See MD II Entertainment*. 935 F.Supp. 1394, 98-99 (1995), *aff'd* 85 F.3d 624 (requiring dancers to wear pasties is "presumptively unconstitutional" and cannot survive strict scrutiny).

## PRAYER

Plaintiff Texas Entertainment Association, Inc. respectfully requests that the Court grant its motion for summary judgment and hold that TAC § 3.722(a)(1) (the "Amended Rule") is unconstitutional and that Texas Business & Commerce Code §§ 102.051-102.056 (the "$5 Fee Statute") is unconstitutional as applied to Plaintiff's members.

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

By:  /s/ Casey T. Wallace
     Casey T. Wallace
     State Bar No. 00795827
     Benjamin W. Allen
     State Bar No. 24069288
     William X. King
     State Bar No. 24072496
     3355 W. Alabama St., Suite 1220
     Houston, Texas 77098
     Telephone: (713) 986-9471
     Facsimile: (713) 986-9472
     casey.wallace@feldman.law
     ben.allen@feldman.law
     will.king@feldman.law
     **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure by filing through the Court's ECF System on April 16, 2018.

Melissa L. Hargis
Pamela D. Deitchle
Assistant Attorney Generals
P.O. Box 12548, Capital Station
Austin, Texas 78711
Tel: (512) 463-2002
Fax: (512) 478-4013
Melissa.Hargis@oag.texas.gov
Pamela.Deitchle@oag.texas.gov
**ATTORNEYS FOR DEFENDANT**

/s/ Casey T. Wallace
Casey T. Wallace