THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ENTERTAINMENT ASSOCIATION, INC., | § § § | NO. 1:17-CV-594–DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| GLENN HEGAR, Comptroller of Public Accounts of the State of Texas, *in his official capacity*, | § § § § | |
| Defendant. | § § § | |
| _____ | § | |

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

On October 22 and 23, 2019, the Court held a bench trial in the above-captioned matter.  Benjamin Allen, Esq. and William X. King, Esq. appeared at the trial on behalf of Plaintiff Texas Entertainment Association, Inc. ("Plaintiff").  (Dkts. ## 72, 73.)  Melissa Hargis, Esq. and Michael Abrams, Esq. appeared at the trial on behalf of Defendant Glenn Hegar, Comptroller of Public Accounts of the State of Texas, *in his official capacity* ("Defendant" or "Comptroller").  (<u>Id.</u>)  After trial, the parties submitted written closing arguments.  (Dkts. ## 80, 81.)

On June 19, 2017, Plaintiff brought suit against Defendant.  (Dkt. # 1.)  Plaintiff alleged this was an action for money damages, declaratory judgment, and injunctive relief brought pursuant to 42 U.S.C. § 1983 and

1

28 U.S.C. § 1343 for violations of Plaintiff's equal protection, due process, and free speech rights.  (Id.)  The case was transferred to the undersigned on June 15, 2018.  (Dkt. # 48.)

On February 27, 2019, this Court issued an order denying Plaintiff's Motion to File First Amended Complaint (Dkt. # 42), granting Plaintiff's Motion for Summary Judgment (Dkt. # 31), and granting in part and denying in part Defendant's Motion for Summary Judgment (Dkt. # 34).  (Dkt. # 50.) Additionally, the order sua sponte granted summary judgment to Plaintiff on its § 1983 claim and partial summary judgment to Plaintiff on its Due Process claim. (Id.)  The October trial addressed the three remaining issues: due process, overbreadth, and equal protection.  (Dkt. # 50 at 38.)

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this civil action arises under the Constitution and laws of the United States.[1]

---

[1] The Court acknowledges the recent case from the Texas First Court of Appeals related to this matter.  Hegar v. Texas BLC, Inc., No. 01-18-00554-CV, 2020 WL 97178, at *5 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, no pet. h.).  There, the First Court insinuated that this Court should have abstained from hearing this case and instead left the matter to the state courts.  Id. (citing Younger v. Harris, 401 U.S. 37 (1971)).  This Court addressed jurisdictional challenges such as this, including a Younger abstention argument, in its prior summary judgment Order. (Dkt. # 50 at 10–12.)  The Court first found it had jurisdiction over the matter in accordance with Magistrate Judge Austin and Magistrate Judge Yeakel's previous findings on a motion to dismiss in this matter, and it determined that Defendant's "scanty arguments" did not cause it to question the prior judges' rulings on the

The Court has considered the record evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses, and ascertained the probative significance of the evidence presented. Upon consideration of the above, the Court finds the following facts by a preponderance of the evidence, and in applying the applicable law to such factual findings, makes the following conclusions of law.  To the extent any findings of fact as stated may also be deemed to be conclusions of law, they shall also be considered conclusions of law; similarly, to the extent any conclusions of law as stated may be deemed findings of fact, they shall also be considered findings of fact.  See Compaq Computer Corp. & Subsidiaries v. C.I.R., 277 F.3d 778, 781 (5th Cir. 2001).

I.      FINDINGS OF FACT

    **1.**     Plaintiff Texas Entertainment Association, Inc. is a Texas corporation that conducts business throughout Texas.  (Dkt. # 1 at 1.)

---

jurisdiction issue.  (Id. at 10.)  As to Younger abstention, the Court found such abstention was inappropriate because it did not meet one of the three "exceptional circumstances" to which the Supreme Court has circumscribed application of Younger.  (Id. at 11 (citing Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 82 (2013) ("In short, to guide other federal courts, we today clarify and affirm that Younger extends to the three 'exceptional circumstances' identified in NOPSI, but no further.")).)

**2.** Defendant Glenn Hegar is Comptroller of Public Accounts for the State of Texas and is sued here in his official capacity. (Dkt. # 1 at 1.)

**3.** In 2007, the Texas Legislature introduced a fee on certain sexually oriented businesses that became effective on January 1, 2008 ("$5 fee statute"). Tex. Bus. & Com. Code Ann. § 102.052 (2009). The basis of this dispute is the application and enforcement of this fee and whether or not certain establishments fall within the purview of the statute. Specifically, the dispute concerns the definition of "nude" in the statute, within the context of the fact that the statute defines a sexually oriented business as one that provides live nude entertainment and performances and authorizes the on-premises consumption of alcohol. Tex. Bus. & Com. Code Ann. § 102.051 (2009).

**4.** The $5 fee statute defines "nude" as: (a) entirely unclothed; or (b) clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks. Id. Effective January 29, 2017, the Comptroller amended its rules ("Amended Rule") construing the term "sexually oriented business" within the $5 fee statute. The Amended Rule states, "Paint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are not clothing." 42 Tex. Reg. 219,

4

<u>amending</u> 34 Tex. Admin. Code § 3.722 (2017).  Plaintiff filed this lawsuit shortly after the Amended Rule's effective date.

5.     Plaintiff, an association, represents member businesses, colloquially called gentleman's clubs or adult cabarets, that state they opted to cease featuring nude entertainment following enactment of the $5 fee statute and began requiring female dancers to wear opaque latex clothing over their breasts ("latex clubs"). (Dkt. # 80 at 1–2.)  Plaintiff argues that Defendant, through the Amended Rule, adopted for the first time a policy that latex clubs provide nude entertainment and therefore are sexually oriented businesses that fall within the purview of the $5 fee statute.  (<u>Id.</u> at 2.)

6.     Ray Langenberg, Special Counsel for the Tax Division of the Comptroller's office, testified that he worked on drafting the Amended Rule and assisted in the crafting of the definition of "clothing."  (Dkt. # 82 at 59.)  When questioned on the issue of the Amended Rule's purpose, Mr. Langenberg stated that the purpose was stated in the preamble and then invoked attorney-client and deliberative process privilege.  (<u>Id.</u> at 82.)  The Court stated on the record in trial, and finds again here, that there is no question that the purpose of the Amended Rule was to bring clubs featuring dancers wearing latex as covering ("latex clubs") within the ambit of the $5 fee statute.  (Dkt. # 83 at 17–18.)

**7.**     Cindy Williams, a former Comptroller auditor with the Business Activities Research team, testified that she issued sexually oriented business fee assessments from 2013 to 2016.  (Dkt. # 82 at 105.)  Ms. Williams testified that during this time, which is before the Amended Rule went into effect, she took the position that latex covering is not clothing.  (Id. at 114.)  She further testified that she generally took the position that a liquid substance applied to the body, even if dries later, can never be considered clothing.  (Id. at 115.)  She stated she relied on a dictionary for her definition of clothing.  (Id.)  Ms. Williams testified that she does not believe the comptroller had any written guidelines as to what is or is not clothing under the $5 fee statute during her time as an auditor.  (Id.)

**8.**     Ms. Williams also testified that she did not recall the definition of clothing being an issue outside of one deposition in which she was questioned about it.  (Id.)  She also testified that she does not recall whether the Comptroller sent letters to latex clubs specifically regarding the definition of clothing.  (Id. at 120.)

**9.**     Paul Zavala, also a Comptroller enforcement officer, also testified that he was responsible for enforcing the $5 fee against sexually oriented businesses in the State of Texas prior to the enactment of the Amended Rule.  (Dkt. # 82 at 124, 126.)  He testified that in a former deposition he had stated, under oath, that in order to be liable for the fee under the statute less than three-fourths of the buttocks

had to be covered.  (Id. at 132.)  However, he testified there was no official

guidelines he followed in that regard.  (Id. at 133.)  He further testified that at that

same deposition he stated that a dancer was considered covered if they had

painted-on latex that covered the complete areola of the breast.  (Id.)  This

deposition occurred prior to the Amended Rule's enactment.  (Id.)  However, Mr.

Zavala specified at trial that while he considered painted-on latex to be covering he

did not consider it to be clothing, as clothing requires a cloth-like material.  (Id. at

135, 141.)

10.     Mr. Zavala further testified that he believed just serving alcohol to

customers, without any sort of stage act or lap dance, even if done fully nude,

would not be entertainment and, therefore, not assessed the $5 fee.  (Dkt. # 83 at

21–22.)  He distinguished a dancer being proactively dressed and flirting from an

act that is considered entertainment.  (Id. at 19.)

11.     Steve Craft, Plaintiff's corporate representative, testified regarding his

personal knowledge of latex clubs and the entertainer's attire.  (Id. at 31.)  Mr.

Craft testified that latex, in its raw form, is a milky liquid substance.  (Id. at 34.)

Mr. Craft testified that, when applied to a person, the liquid latex is applied with

sponges and four coats are put on, which are equivalent to a surgical glove.  (Id. at

35.)  Mr. Craft testified that the latex had to be peeled off in order to be removed,

like a decal.  (Id. at 36.)  He further testified that the entertainers wear these latex

coverings on their breasts and boy shorts, as in cheerleader shorts, covering their entire buttocks.  (Id. at 41.)  Mr. Craft testified that someone at the club would not be able to see any portion of an entertainer's breasts from the top of the areola down to the bottom and the sides if she were wearing the latex covering.  (Id. at 43.)

12.    Mr. Craft stated that after the Texas Legislature enacted the $5 fee statute there were businesses he was personally associated with that chose to become latex clubs, rather than provide topless entertainment, in order to avoid the $5 fee.  (Id. at 37.)  Mr. Craft further testified that prior to 2017, when the Amended Rule was enacted, he never had the Comptroller come to any club he was associated with that was a latex club and say that latex does not count as covering.  (Id.)  In fact, Mr. Craft testified that he had a visit at a latex club from three different enforcement officers in what he guessed was late 2016 who wanted to look at the licenses and they told his general managers that everything looked good.  (Id.)

13.    Mr. Craft also testified that he has never heard of the Comptroller enforcing the statute against businesses other than cabarets.  (Id. at 77.)  He testified regarding his attendance at a Beyoncé concert at NRG Stadium in Houston.  (Id. at 44.)  He stated that during her performance her buttocks were exposed, alcohol was being served, there was an audience of two or more people,

and she gave a live performance.  (Id.)  He testified that, under his perspective,
Beyoncé was nude under the definitions contained within the statute.  (Id.)  Mr.
Craft also testified regarding a SuicideGirls event in Houston on April 29, 2017,
after the enactment of the Amended Rule.  (Id. at 46.)  He testified regarding a
picture of their performance and stated that the performers were topless with
electrical tape covering their nipples and wearing underwear that left their buttocks
exposed.  (Id. at 45.)  He further testified he was familiar with Warehouse Live,
where they performed, and that they serve alcohol, have audiences of two or more
people, and provide live entertainment.  (Id. at 47–48.)

      **14.**     Mr. Craft testified that the Amended Rule provides that the
Comptroller will presume that a business is a sexually oriented business if the
business holds itself out as a sexually oriented business, which may include how
they portray themselves on social media.  (Id. at 57.)  To that effect, Mr. Craft
testified regarding his knowledge of Tight Ends Sports Bar & Grill.  (Id. at 56.)  He
testified that he had been to Tight Ends, that they serve alcoholic beverages to two
or more persons, and the women there are dressed in a state of nudity under the $5
fee statute.  (Id.)  He further testified regarding their Instagram page, which
features pictures of a waitress holding beer with portions of her breasts revealed.
(Id. at 56–57.)  He also testified that when he had gone to Tight Ends he witnessed

the waitresses sitting and talking with, and in his opinion entertaining, the customers.  (Id. at 59.)

15.     Mr. Craft also testified regarding his experience at Knockout Sports Bar & Grill, which serves alcohol to two or more people and has waitresses that would be considered nude under the statute.  (Id. at 64.)  He stated that his friend, Eric Langan, paid $20 to have his picture taken with one of the waitresses, similar to paying $20 for a dance at a topless club.  (Id. at 67.)  Mr. Craft testified that the whole concept of these two establishments, and other similar ones, was to serve food and alcohol and have pretty girls that are friendly and that sit down and talk to patrons.  (Id. at 71.)  Mr. Craft testified that at these establishments certain songs will come on and the waitresses will do a choreographed dance, sometimes on the bar or on a table, and the waitresses will sometimes bring viewers from the crowd up with them.  (Id.)

16.     Mr. Craft testified that back in early 2017, he was associated with establishments such as those described above, namely Sports City and Sneaky Pete's, and the Comptroller did not assess either one of them the $5 fee.  (Id. at 77.)  He further stated that the Comptroller had not assessed the $5 fee against any similar sports bar and grill type entity in the administrative proposals for decisions he had reviewed.  (Id.)  Mr. Craft testified that, in his wide involvement with clubs, businesses, sports bars, adult cabarets and non-adult cabarets throughout Texas, he

did not know of any entity other than an adult cabaret to whom the $5 fee had been assessed.  (Id. at 78.)

17.    Finally, Mr. Craft testified regarding JAI Dining Services Odessa II, Inc. in Odessa, TX, which is an adult cabaret.  (Id. at 81.)  He stated that the entertainers attire themselves in boy shorts, latex, and bikini tops.  (Id. at 82.)  He stated that they wear both the latex and then the bikini top over the latex as a second layer of defense in case the bikini top moves around.  (Id. at 83.)  Mr. Craft testified that the Comptroller had assessed Odessa II with fees under the $5 fee statute in the sum of hundreds of thousands of dollars.  (Id. at 84.)  He testified that Odessa II asked for a redetermination from an administrative judge, who determined it was not a sexually oriented business during the assessment period, which included both before and after the Amended Rule went into effect.  (Id. at 84–85.)  He testified that the Comptroller adopted the administrative judge's finding on July 15, 2019.  (Id. at 85.)

II.    CONCLUSIONS OF LAW

A.    **Whether retroactive enforcement of the $5 fee statute as construed by the Amended Rule violates due process**

1.    For retroactive application of the $5 fee statute, as construed through the Amended Rule, to be unconstitutional its "retroactive application" must be "so harsh and oppressive as to transgress . . . constitutional limitation[s]."  United States v. Hemme, 476 U.S. 558, 568 (1986).  One of the relevant circumstances for

courts to consider is "whether, without notice, a statute gives a different and more oppressive legal effect to conduct undertaken before enactment of the statute." Id. at 569.  Notably, "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).

2.      This Court's February 2019 summary judgment order found that to the extent the Comptroller intended to or did enforce the Amended Rule to business conduct that occurred before he noticed his intention to modify the definition of nudity under the $5 fee statute such enforcement gave, without notice, a different and more oppressive legal effect to conduct previously undertaken and was thus harsh and oppressive.  (Dkt. # 50 at 31.)  In its Order, the Court noted that there is undisputed evidence in the record that the latex clubs presented dancers wearing latex specifically to avoid enforcement of the $5 fee against them and were reassured the use of latex coverings allowed them to comply with the statute and avoid the fee.  (Id. at 33.)  Accordingly, the Court denied Defendant's motion for summary judgment on Plaintiff's due process claim.  (Id.)

3.      Plaintiff urges that the first time the Comptroller gave notice to businesses that its office did not consider latex-clad performers to be "clothed" was in the October 28, 2016, issue of the Texas Register when the proposed Amended

Rule was published.  (Dkt. # 80 at 10.)  Defendant counters that the plain language of the $5 fee statute is clothing dependent, and therefore, provided fair notice and does not implicate due process retroactivity concerns.  (Dkt. # 81 at 4.)  Defendant points to the language of the October 28, 2016 Texas Register statement, which stated that the Amended Rule "is a proper construction of the statute and articulates what has always been the law."  (Id. at 6.)  They characterized what Plaintiff calls lack of notice as confusion among businesses between coverage-dependent local ordinances and the clothing-dependent $5 fee statute.  (Id.)

4.      The testimony elicited at trial made clear that there was a lack of official policy at the Comptroller's office regarding whether latex was clothing. Ms. Williams herself testified that in making the determination whether latex was or was not clothing that she consulted a standard dictionary.  (Dkt. # 82 at 115.) Furthermore, Mr. Craft testified that three enforcement officers came to one of his latex clubs in late 2016 and told him everything was good.  (Dkt. # 83 at 37.) Accordingly, the question for the Court is whether the language of the statute was clear enough that Plaintiff should have been on notice that entertainers in latex would still be considered nude under the statute.

5.      In its summary judgment Order, the Court stated, "The Comptroller's attempt to enforce the fee against these business for conduct undertaken before they were put on notice that the definition of nudity would be changed or clarified

to cover their conduct is harsh and oppressive, and thus violates due process."
(Dkt. # 50 at 33.)  Defendant presented nothing at trial beyond relying on the
language of the statute.  (Dkt. # 81 at 7 ("The statute itself provided sufficient
notice to business operates of what is or is not 'nude' when it was passed in
2007.").)[2]  Plaintiff presented at trial two witnesses that demonstrated the latex
clubs had reason to be confused whether the $5 fee statute applied to them or not.
Plaintiff also presented evidence that these businesses became latex clubs, as
opposed to remaining traditional topless clubs, specifically to avoid the $5 fee,
further indicating they were not aware they would still be considered subject to the
fee.[3]  (Id. at 33.)

6.      Accordingly, the Court finds that the $5 fee, as Defendant seeks to
enforce it retroactively before the October 28, 2016 notice, violates due process
because the businesses were not put on notice it applied to them.  The Court
enjoins enforcement of the Amended Rule prior to October 28, 2016.

---

[2] The Court notes that if this were the case why did the Comptroller see the need to
amend the rule to ostensibly include latex coverings.
[3] The Court further notes that whether latex is clothing or not is genuinely unclear
in today's fashion age.  Recently, Kim and Kourtney Kardashian, two leading style
influencers, were recently spotted in Paris wearing head-to-toe latex that Kim
revealed was "fresh off the runway."  Yahoo! Lifestyle,
https://www.yahoo.com/lifestyle/kim-kourtney-kardashian-twinned-head-
123200791.html (last visited Mar. 5, 2020).

**B.      Whether the $5 fee statute became overbroad following the enactment of the Amended Rule**

1.      Facial overbreadth adjudication is an exception to traditional rules of practice and should be employed sparingly.  Baby Dolls Topless Saloons, Inc. v. City of Dallas, Tex., 295 F.3d 471, 482 (5th Cir. 2002) (citing Broadrick v. Oklahoma, 413 U.S. 601, 613, 615 (1973)).  "[W]here conduct and not merely speech is involved, … the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Id.  "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'"  City of Chicago v. Morales, 527 U.S. 41, 52 (1999) (quoting Broadrick, 413 U.S. at 601, 612–615).

2.      In Baby Dolls Topless Saloons, the Fifth Circuit ruled on whether an amended definition of "specified anatomical areas" in a city's sexually oriented business ordinance was overbroad because it could operate to classify a number of "mainstream" businesses as sexually oriented businesses.  Baby Dolls Topless Saloons, 295 F.3d at 482.  However, prior to the Fifth Circuit's consideration of the matter, the city amended the ordinance to specifically remove adult theaters, i.e. theaters, auditoriums, concert halls, etc. featuring live entertainment, from the ordinance's purview.  Id.  As such, the Fifth Circuit only considered whether the

15

amended definition operated to classify "mainstream" movie theaters and video stores as "adult" motion picture theaters and video stores.  Id.

3.     Here, the issue is whether the statute, when applied through the Amended Rule, is impermissibly overbroad, including a consideration as to whether it could operate to classify many mainstream entertainment options, such as a Beyoncé concert at NRG Stadium, as a sexually oriented business.

4.     Plaintiff urges that the Amended Rule is impermissibly overbroad. (Dkt. # 80 at 12.)  Plaintiff argues that assuming the Amended Rule has a plainly legitimate sweep, only for the purposes of the overbreadth claim, that its application to latex clubs falls far outside of it, making it an "impermissible application" beyond the Amended Rule's purpose.  (Id.)  Plaintiff points to the Texas Supreme Court's explanation that the purpose of the $5 fee statute is directed "not at expression in nude dancing, but at the secondary effects of nude dancing when alcohol is being consumed."  (Id. at 13 (quoting Combs v. Texas Entm't Ass'n, Inc., 347 S.W.3d 277, 287–88 (Tex. 2011)).)  Plaintiff argues that the Amended Rule targets latex clubs while leaving free from regulation other businesses featuring nude entertainment, as defined by the Amended Rule, and that this definition of clothing impermissibly broadens the $5 fee statute's scope to capture a broad range of businesses without regard to the underlying purpose.  (Id.)

16

**5.**     Plaintiff points to a number of situations that demonstrate what it argues is an impermissibly broad scope, such as concerts and performance artists covered in clay-like substances.  Id. at 14–15.  Plaintiff claims that the testimony at trial showed that the Amended Rule's purpose is to impose the $5 fee on any business featuring expressive entertainment using materials other than cloth to cover the relevant anatomical areas.  (Id. at 15.)  Furthermore, Plaintiff asserts that the Comptroller's witness chose to assert privilege as to the Amended Rule's purpose and instead simply directed the Court to the $5 fee statute's preamble.  (Id. at 16.)  Plaintiff contends that the Court should disregard any argument indicating there was a legitimate government purpose and find there was none.  (Id.)

**6.**     Defendant states that Plaintiff has not proven that the Amended Rule is overbroad.  (Dkt. # 81 at 7.)  First, Defendant urges that the Amended Rule, defining clothing, is narrowly tailored to serve compelling state interests.  (Id.) Second, it argues that the State of Texas has a substantial interest in ameliorating the negative secondary effects of live nude entertainment performed where alcohol is consumed and in protecting the state fisc.  (Id.)

**7.**     Defendant points to Baby Dolls Topless Saloons, where the Fifth Circuit held the city zoning ordinance was not overbroad, and argues that the Amended Rule does not even go that far since it does not have a requirement of what a performer may or may not wear.  (Id. at 8.)  Defendant concludes by

17

arguing Plaintiff has failed to show that the Amended Rule's clothing definition is actually overbroad or that any such overbreadth is substantial.  (Id.)

**8.**      The Court finds that the Amended Rule is not overbroad.  As a preliminary matter, the Court acknowledges Plaintiff's assumption for the purposes of the overbreadth claim that the Amended Rule has a plainly legitimate sweep. (Dkt. # 80 at 12.)  Accordingly, the Court confines its analysis only to whether the Amended Rule's sweep is substantially overbroad when judged in relation to that plainly legitimate sweep.  In doing so, it begins its analysis from the mindset, as the Fifth Circuit has reinforced, that overbreadth adjudication is an exceptional remedy to be employed sparingly.  Here, the Court finds that any overbreadth of the Amended Rule is not substantial enough to find it impermissibly overbroad.

**9.**      The Court acknowledges the intention of the overbreadth doctrine to protect third parties not before the court who desire to engage in legally protected expression but who may refrain from doing so rather than risk persecution or undertake to have the law declared partially invalid.  Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985).  However, where conduct and not merely speech is involved, there is the further consideration outlined in Broadrick that the overbreadth be not only real but also substantial as judged in relation to the statute's plainly legitimate sweep.  Broadrick, 413 U.S. at 615.  "The concept of 'substantial overbreadth' is not readily reduced to an exact definition. It is clear,

18

however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984). "In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id. at 801.

10.    The Court finds that such a realistic danger is not present here. As to its application to latex clubs, they are a party before the Court and therefore the overbreadth doctrine is not the most appropriate remedy for any violation of their rights, which have been fully adjudicated through other claims. As to its application to potential third parties' protected conduct that the Amended Rule's sweep could impermissibly compromise, the Court finds that the realistic danger that the Amended Rule will significantly compromise their recognized First Amended protections is not present to the level necessary for a facial invalidation of the statute. The potential danger does not rise to the necessary level to use this remedy that the Fifth Circuit has urged courts should use "sparingly" and "as a last resort." Baby Dolls Topless Saloons, 295 F.3d at 482.

11.    The $5 fee statute states its application is limited to "a nightclub, bar, restaurant, or similar commercial enterprise" that provides "two or more

individuals live nude entertainment or live nude performances" while permitting on-premises consumption of alcoholic beverages.  Tex. Bus. & Com. Code Ann. § 102.051 (2009).  The Amended Rule's definition of clothing operates within the sphere of the $5 fee statute's application, which the text of the statute limits to a nightclub, bar, restaurant, or similar commercial enterprise.  While the Court considers "similar commercial enterprise" to be a bit concerning in its breadth, the Court ultimately finds that this definition limits the application of the $5 fee statute and corresponding Amended Rule sufficiently to save it from Plaintiff's overbreadth challenge.  This definition means that an artist putting on an exhibition where they're covered in clay at a museum or a singer doing an album cover covered in whipped cream would not be susceptible to the $5 fee statute.

12.     The concerning part of the statute is that a performer at a theater or a headline act at NRG Stadium could conceivably fall under the statute under a liberal reading of "similar commercial enterprise," however, this seems an unlikely application of the statute and the Court doubts the effect of the statute has been to chill those performers protected conduct to the substantial level necessary to find the Amended Rule facially overbroad.

13.     The Court is mindful that the Fifth Circuit and Supreme Court have held that just because one can conceive of an impermissible application of a statute does not render it susceptible to an overbreadth challenge.  United States v. Hicks,

980 F.2d 963, 970 (5th Cir. 1992) ("Rather, a party challenging a statute on overbreadth grounds must demonstrate that there is a 'substantial' potential that the overbroad statute will chill third parties' speech." (quoting Broadrick, 413 U.S. at 615)); Vincent, 466 U.S. at 800.  While the Court does find that "similar commercial enterprise" renders the $5 fee statute, when applied through the Amended Rule, overly vague, it also finds that Plaintiff has not demonstrated there is a substantial potential that it will chill third parties' speech, with third parties being performers at venues like NRG Stadium in Houston.  Plaintiff's argument focused on how the statute could be read to cover them; however, they failed to demonstrate how those parties have had their speech chilled in any way. Furthermore, the Court finds that the third parties Plaintiff exhibited, such as Beyoncé, Jennifer Lopez, and the SuicideGirls, likely have not been subjected to the $5 fee statute.

    **14.**     Thus, the Court finds that the impermissible applications of the Amended Rule are not sufficiently substantial to deem it facially overbroad when judged in relation to its plainly legitimate sweep.

    **C.**     **Whether the Comptroller's enforcement of the $5 fee statute through the Amended Rule violates Equal Protection**

    **1.**     "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms if a

statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Fifth Circuit has held that a state violates the equal protection clause when it treats one set of persons differently from others who are similarly situated.  Ford Motor Co. v. Texas Dept. of Transp., 264 F.3d 493, 510 (5th Cir. 2001) ("The equal protection guarantee applies to all government actions which classify individuals for different benefits or burdens under the law.").  The inquiry as to whether they are similarly situated focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action.  Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000).

> **2.**      "Unless a suspect class or fundamental right is involved, we generally employ the rational basis test in deciding equal protection claims." Wheeler v. Miller, 168 F.3d 241, 252 (5th Cir. 1999).  "By contrast, if a classification does target a suspect class or impact a fundamental right, it will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." Sonnier v. Quarterman, 476 F.3d 349, 368 (5th Cir. 2007).  "The Supreme Court has explained that fundamental rights, for equal protection purposes, are such rights as: a right of a uniquely private nature, the right to vote, right of interstate travel and *rights guaranteed by the First Amendment*." Id. at 368, n.16 (emphasis added).

**3.**     Plaintiff argues that the Comptroller has failed to provide evidence that it enforced the Amended Rule against anything other than a latex club or the $5 fee statute against anything but a cabaret.  (Dkt. # 80 at 18.)  They further urge that the Comptroller has failed to provide any basis for not enforcing the $5 fee statute, as interpreted through the Amended Rule, against a myriad of businesses featuring nude entertainment in the presence of alcohol, namely Beyoncé concerts, SuicideGirls performances, Jennifer Lopez concerts, and waitress entertainers at a variety of sports bar and grill type establishments.  (Id.)

**4.**     Plaintiff states that they have presented compelling evidence that the Comptroller's enforcement of the $5 fee statute against latex clubs was motivated by an improper purpose, i.e. to regulate and curtail expressive dance.  (Id. at 20.) Plaintiff concludes that Defendant cannot demonstrate that the Amended Rule, which affects First Amendment interests, is narrowly tailored to a legitimate objective.  (Id. at 22.)

**5.**     Defendant asserts that the Amended Rule does not violate equal protection and claims Plaintiff presented no evidence that its members are treated differently than other types of businesses providing live nude entertainment, as the Amended Rule interprets nude.  (Dkt. # 81 at 1–2.)  Defendant further distinguishes a music concert where the entertainer has no contact with the audience and cheerleaders in a stadium from the types of businesses in question

here.  (<u>Id.</u> at 2.)  Notably, however, Defendant does not address the type of sports
bar and grill establishments that Plaintiff also asserts is a similarly situated
business.

6.      Defendant then states that, assuming for the purposes of this argument
that the Comptroller did not assess certain types of non-cabaret businesses $5 fees,
that it could be due to a "multitude of factors including the judicious application of
limited enforcement resources of the Comptroller, or the prosecution of what the
agency deemed to be the most flagrant violators of the law."  (<u>Id.</u>)  As to purpose,
Defendant states that the Amended Rule applies the $5 fee statute, which is "aimed
at the negative secondary effects of live nude entertainment performed in the
presence of alcohol." (<u>Id.</u> at 3 (citing <u>Combs</u>, 347 S.W.3d at 286–87).)  Defendant
further urges that preventing sexual assault is a compelling government purpose
and the collected fees from the statute are deposited into the sexual assault program
fund.  (<u>Id.</u> at 4.)  Defendant states that discouraging alcohol consumption in the
presence of live nude entertainment is necessary to reduce the number of sexual
assaults on workers in sexually oriented businesses.  (<u>Id.</u>)

7.      Plaintiff's corporate representative testified at trial that he has been
professionally involved with not only adult cabarets, specifically latex clubs in this
context, but also with sports bar and grill type establishments.  (Dkt. # 83 at 32.)
He testified that the Comptroller has not, to his knowledge, accessed the $5 fee

against sports bars and grills that meet the definition of a sexually oriented businesses under the Amended Rule, including both those he has been personally involved with and others, even though, according to his testimony, waitresses will perform choreographed dances at certain times and will get on the bar or on a table to do so.  (Id. at 32, 71.)

      **8.**     Mr. Zavala, who worked for the Comptroller, testified that he would not have assessed the $5 fee against an establishment, even if a fully nude waitress was serving alcohol to customers, unless there was a stage performance or lap dance provided.  (Dkt. # 83 at 21–22.)  Plaintiff points out, in Exhibit 6, that the Comptroller form in fact only provides two concrete options for what types of performance were observed, stage performance or table dance.  (Dkt. # 75-1 at 13.)

      **9.**     At the summary judgment stage, this Court found that the Amended Rule is an unconstitutional restriction on expressive conduct under the First Amendment.  (Dkt. # 50 at 25.)  As such, the Court finds that the Amended Rule impacts a fundamental right.  Therefore, the Court will apply a strict scrutiny standard and uphold the Amended Rule only if it finds that it is precisely tailored to further a compelling government interest.

      **10.**    First, the Court finds that the sports bar and grill type establishments discussed at trial are similarly situated to latex clubs.  This includes establishments such as Knockout Sports Bar, Tight Ends Sports Bar & Grill, and Ojos Locos

25

Sports Cantina.  The management and operation of the two businesses are similar, as is reinforced by the fact that Mr. Craft himself has been professionally involved in both throughout his career.  While they are not both car manufacturers, as say Ford and General Motors, a latex club with dancing performers who also serve alcohol and a sports bar with scantily-clad bikini attired waitresses doing choreographed dances and exposing part of the buttocks while serving alcohol appear similarly situated for the purposes of an equal protection analysis and would clearly violate the Amended Rule.

11.    Furthermore, as noted above, the plain language of the $5 fee statute applies to sports bars and grills with scantily-clad bikini attired waitresses that serve alcohol and perform choreographed dances.  Tex. Bus. & Com. Code Ann. § 102.051 (defining a sexually oriented business as a bar or restaurant that provides for an audience of two or more live nude entertainment and authorizes on-premises consumption of article).  The statute further defines nude as entirely unclothed or clothed in a manner that leaves visible through less than fully opaque clothing any portion of the breasts or buttocks.  Id.  As such, the Court finds that sports bars and grills with bikini-clad waitresses serving alcohol and doing choreographed dances are similarly situated to latex clubs.

12.    Second, the question becomes whether the State of Texas has treated latex clubs and these sports bars and grills differently.  The Court finds that it has,

26

which Defendants barely even argue against.  It appears clear that the Comptroller

intended that the Amended Rule bring only latex clubs within the purview of the

$5 fee statute and not other similar establishments, as further demonstrated by Mr.

Zavala's testimony and Plaintiff's Exhibit 6 that show a stage performance or table

dance was an expected prerequisite to enforcement even though the statute only

requires performance or entertainment.  (Dkt. # 75-1 at 13.)

**13.**     Defendant instead provides reasons why the two have been treated

differently, namely limited state resources and a desire to prosecute the most

flagrant violations of the law.  In doing so, Defendant cites to <u>Tibbetts</u>, where the

Fifth Circuit held that due to limited government resources allowing some tax

evaders and tax protestors to elude prosecution is not sufficient to find a

differentiation in treatment.  <u>United States v. Tibbetts</u>, 646 F.2d 193, 196 (5th Cir.

1981).  The Court finds that unpersuasive here.  The Fifth Circuit said "there will

always be some" who elude prosecution in a scheme as large as nationwide tax

collection; that differs from the matter at hand where the State of Texas is

enforcing the $5 fee statute, through the Amended Rule, categorically against latex

clubs and but not against sports bars and grills.  Furthermore, at trial, Defendant

provided no empirical evidence to support the conclusion that it was not enforcing

the Amended Rule against sports bars and clubs due to lack of resources.

27

**14.** Having found that the State of Texas treats latex clubs differently from similarly situated commercial enterprises, the Court turns to the strict scrutiny analysis. As stated above, the Court will uphold the Amended Rule only if it finds that it is precisely tailored to further a compelling government interest. The Court finds it is not. Through the Amended Rule, the $5 fee statute's reach has been expanded to include clubs where the performers are covered to the same extent, and in some cases more, than a bikini-clad waitress is. Accordingly, the focus is on what the performer and waitress are doing. The statute simply states that "live nude entertainment" or "live nude performances" will qualify an establishment as a sexually oriented business, given the other factors also being present.

**15.** The Court finds this is not narrowly tailored to capture only the type of negative secondary effects of live nude entertainment performed in the presence of alcohol that would occur only in a latex club but not in a sports bar of the type described above, which is the stated purpose of the statute. The statute could be read to also incorporate sports bars with dancing bikini-clad waitresses, and the State of Texas's stated interest in reducing the number of sexual assaults on workers in sexually oriented businesses, which is seemingly just as present in those sports bars as in latex clubs. Yet, the State of Texas chooses to only enforce it against a certain class of establishments, namely adult cabarets or specifically latex clubs, which is constitutionally problematic.

**16.** Accordingly, the Court finds that the Amended Rule, and as such the way the $5 fee statute is applied through it, does not survive Plaintiff's equal protection challenge and is therefore, as currently applied, unconstitutional. The Court would note that it may be possible depending upon further amendment of the rule and the drafting of appropriate guidelines as well as uniform enforcement for the issues that give rise to this matter to be cured.

CONCLUSION

For the reasons stated above, the Court finds that: (1) the Amended Rule cannot be retroactively applied to collect $5 fees before establishments were put on notice on October 28, 2016, (2) the Amended Rule is not impermissibly overbroad, and (3) the current enforcement of the $5 fee statute as interpreted through the Amended Rule violates equal protection and is therefore unconstitutional as currently applied. This order constitutes final judgment in this case.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, March 6, 2020.

_____
David Alan Ezra
Senior United States District Judge

29